**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

BRIANNA CARNEY AND CREWBLOOM LLC,

                                 Plaintiffs.

-against-

ALEC MICHAEL BARBAZ,

                               Defendant.

-----------------------------------------------------------------X

Civil Action No. 24-CV-05362 (AC)

## FIRST AMENDED COMPLAINT

Plaintiffs Brianna Carney ("Carney") and CrewBloom LLC ("CrewBloom" or the "Company," and collectively with Carney, the "Plaintiffs"), through their undersigned attorneys, by way of this Complaint against Defendant Alec Michael Barbaz ("Barbaz" or "Defendant"), allege as follows:

## NATURE OF THE ACTION

1. Ms. Carney and Mr. Barbaz were in a relationship and engaged to be married.

2. Since Ms. Carney ended that engagement in November 2023, Mr. Barbaz has engaged in an egregious and illegal pattern of harassing conduct to torture Ms. Carney and destroy the business she co-founded, CrewBloom.

3. Based on information obtained from Apple, Spectrum, Verizon, and Tesla, Mr. Barbaz unlawfully created a forensic duplicate of Ms. Carney's iPhone eSIM (the "Illegal Duplicate Device").

4.      Using the Illegal Duplicate Device, Mr. Barbaz fraudulently impersonated Ms. Carney each time he (1) accessed any item using the Illegal Duplicate Device; (2) entered Ms. Carney's online accounts and viewed, altered, deleted, or downloaded any document contained in it; (3) entered CrewBloom's Google Drive and Google Workspace and viewed, altered, deleted, or downloaded any document contained in it; (4) accessed Ms. Carney's Apple and iCloud accounts in any manner; (5) accessed Ms. Carney's NYU Langone MyChart application, containing her sensitive and private medical information; (6) took any action with Ms. Carney's Medtronic CareLink application, by which insulin is pumped directly into her body, placing her at risk of grave physical injury; (7) took any action with Ms. Carney's Tesla, including but not limited to covertly recording the inside of the vehicle and opening its front trunk, putting Ms. Carney in extreme risk of physical danger; (8) created fake accounts, purporting to be Ms. Carney, without her permission; (9) took any activity on Ms. Carney's social media and other accounts and applications, and; (10) intercepted Ms. Carney's phone calls.

5.      Further, using the Illegal Duplicate Device, Mr. Barbaz also illegally accessed and exported thousands of files of protected trade secret information belonging to CrewBloom, including but not limited to client lists, pricing models, and materials related to the Company's predictive outbound artificial intelligence language project (the "AI Project," and together with CrewBloom's other confidential and proprietary information, the "Trade Secrets").

6.      CrewBloom protects the confidentiality of its Trade Secrets, as detailed below.

7.      Records confirm that Mr. Barbaz engaged in this unlawful conduct using the company-owned devices and operating systems of his employer, Point72 Asset Management, L.P. ("Point72"), while physically present in their offices and during regular business hours.

8.      Point72 has been on notice of this illegal activity since January 30, 2024, when other counsels for CrewBloom first alerted Point72 of Mr. Barbaz's heinous conduct using Point72's systems and resources.  *See*, Exhibit A.

9.      Through these intentional and illegal acts, Mr. Barbaz has inflicted severe emotional and physical trauma on Ms. Carney and caused significant monetary damages to both Ms. Carney and CrewBloom.

10.     To date, CrewBloom has expended close to $350,000 on data breach investigations, technology consultants, insurance-related costs, and replacing computers, phone, and other devices, in an attempt to mitigate the damage Mr. Barbaz has caused.

11.     Some of the harm Mr. Barbaz has caused CrewBloom cannot be easily quantified. As Mr. Barbaz is aware, the Company has been preparing to be sold to investors and Mr. Barbaz's hack into CrewBloom's systems and his misappropriation of its Trade Secrets has eroded the Company's value and jeopardized its sale.

12.     Mr. Barbaz's actions have undermined and will continue to undermine CrewBloom if not enjoined.  If Mr. Barbaz does not cease his activities immediately, the damage to CrewBloom's business and goodwill will be certain and incalculable.

13.     As a result of Defendant's actions, Ms. Carney has suffered both actual and unquantifiable harm.

14.     Ms. Carney has endured severe mental, emotional, and physical anguish, requiring her to seek emergency medical care (physical and mental) and to take medications that aggravate her diabetic condition.

15.     Ms. Carney has had to spend time that she would have otherwise devoted to CrewBloom on protecting herself against Defendant's unthinkable and horrifying conduct.

16.     Ms. Carney coaches a Special Olympics figure skating team and, due to Mr. Barbaz's incessant harassment, Ms. Carney has been unable to serve in that position as an effective leader.

17.     This has caused Ms. Carney additional emotional and mental suffering, as she is a passionate advocate for these athletes.

18.     Plaintiffs seek injunctive and monetary relief against the Defendant for misappropriating the Trade Secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* (the "DTSA"), violations of the Computer Fraud and Abuse Act 18 U.S.C. § 1030, *et seq.* (the "CFAA"), Wiretap Act 18 U.S.C. § 2510, *et. seq.* ("FWA"), Stored Communications Act 18 U.S.C. § 2701, *et seq.* ("SCA"), as well as for tortious interference, misappropriation of trade secrets, intentional infliction of emotional distress, conversion, trespass to chattel under New York law.

## THE PARTIES

19.     Plaintiff Ms. Carney is a resident of the State of New York.

20.     Plaintiff CrewBloom is a New York limited liability company with its principal place of business in Manhattan, New York.

21.     Defendant is a resident of the State of New York.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint includes claims arising under the laws of the United States, specifically DTSA, 18

U.S.C. § 1836, *et seq.*, the CFAA, 18 U.S.C. § 1030, *et seq.*, the FWA, 18 U.S.C. § 2510, *et. seq.*, and the SCA, 18 U.S.C. § 2701, *et seq.*

23. This Court has supplemental jurisdiction under 28 U.S.C. § 1361 for Plaintiffs' claims for tortious interference, misappropriation of trade secrets, intentional infliction of emotional distress, conversion, trespass to chattel under New York law and common law.

24. The events giving rise to these causes of action occurred in the Southern District of New York, specifically in New York County, where Mr. Barbaz used Point72 systems to commit the illegal acts. Venue is proper under 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### A. Introduction

25. Ms. Carney is an entrepreneur and philanthropist. In 2016, Ms. Carney co-founded CrewBloom, a global recruitment and outsourcing services consultancy.

26. CrewBloom employs computer systems which facilitate recruitment and outsourcing services for customers with prospective employees, both located nationwide and internationally.

27. As a result, CrewBloom's computer systems engage in both interstate and foreign commerce.

28. CrewBloom has spent significant time and resources since its inception to develop its Trade Secrets.

29. The Trade Secrets are not readily available to the public or CrewBloom's competitors.

30.    If competitors obtained the Trade Secrets, CrewBloom would be harmed, as the competitors can use the information to undercut CrewBloom in the highly competitive recruitment and outsourcing industry.

31.    CrewBloom securely stores its Trade Secrets on its Google Workspace systems, which can only be accessed through password-protected entry using confidential Company credentials, among other layers of authentication and security.

32.    Even so, not all CrewBloom employees can access all of the Trade Secrets, as an important privacy and protection measure.  Only CrewBloom employees with a need to access the Trade Secrets, or certain elements of them, have credentials which allow that limited access.

33.    Ms. Carney and the other co-founder, Kate Ringcodan, have the highest level of security clearance and only their credentials permit access to all of CrewBloom's Trade Secrets.

34.    CrewBloom instructs its employees to maintain the confidentiality of the Trade Secrets.

35.    The Trade Secrets were developed as a result of significant time and company investment over nearly a decade, and therefore would be extremely difficult for the public or competitors to replicate.  To date, CrewBloom has invested over $175,000 in developing the AI Project alone.

36.    Mr. Barbaz is the Internal Audit Manager of Point72.

37.    Ms. Carney and Mr. Barbaz were involved in a romantic relationship for approximately two years.  Ms. Carney and Mr. Barbaz were engaged to be married in 2024.

38.    In late November 2023, Ms. Carney called off the engagement and ended the relationship with Mr. Barbaz.

39. The night she called off the engagement and ended the relationship, Ms. Carney disabled Mr. Barbaz's phone key access to her Tesla. Ms. Carney received an email confirmation from Tesla evidencing that she had removed Mr. Barbaz from the vehicle's permitted phone key users. *See*, Exhibit B.

40. Following the breakup, Mr. Barbaz went on a rampage of extreme and outrageous behavior directed against Ms. Carney, to cause her severe emotional distress and physical harm as revenge for ending their relationship and calling off the wedding.

41. Among other things, Mr. Barbaz sent his family to harass Ms. Carney at her home and he sent Ms. Carney countless threatening and vulgar messages by text, email, and social media.

42. Mr. Barbaz's actions compelled Ms. Carney to seek an Order of Protection against Mr. Barbaz, which she obtained from the Kings County Family Court (File #321477) on March 1, 2024.

43. Although unbeknownst to Ms. Carney at the time, her basis for obtaining the Order of Protection was only the tip of the iceberg as to Mr. Barbaz's actual illegal and harassing conduct.

**B. Ms. Carney and CrewBloom Discover Mr. Barbaz's Illegal Duplicate Device**

44. In late December 2023, Ms. Carney traveled to Asia to prepare for meetings regarding the potential acquisition of CrewBloom. Ms. Carney arrived in Manilla and joined her CrewBloom team and her co-founder to review audits and other materials related to upcoming meetings with merger and acquisition firms.

45. Upon Ms. Carney's arrival in Manilla, a CrewBloom engineer noticed that Ms. Carney's Company credentials had been compromised.

46. Ms. Carney was shocked because she, like all CrewBloom staff, took great care to protect the Company's Trade Secrets and confidential information.

47. The Company hired outside consultants and notified its insurance carrier of this breach, and a formal investigation was launched (that continues to this day).

48. To date, CrewBloom has spent close to $350,000 – excluding legal fees and costs – to address the damage Defendant is causing. In addition, Ms. Carney has spent approximately $75,000 of her own funds, excluding legal fees and costs.

49. The roughly $350,000 CrewBloom has spent includes costs of responding to the data breach, assessing the damage to CrewBloom's data and systems, purchasing multiple new replacement devices, and attempting to restore CrewBloom's systems to its condition prior to the offense.

50. Ms. Carney and CrewBloom also lost revenue and incurred costs as a result of Defendant's interruption to CrewBloom's services.

51. From this investigation, Ms. Carney and CrewBloom received information from Apple, Spectrum, Verizon, and Tesla, evidencing that Mr. Barbaz had surreptitiously created a forensic duplicate of Ms. Carney's iPhone eSIM.

52. The proof showed that Mr. Barbaz had been using that Illegal Duplicate Device since the breakup in November 2023 to fraudulently impersonate Ms. Carney and improperly access, monitor, download, and misappropriate her – and CrewBloom's – private data, applications, systems and Trade Secrets.

53.    When Mr. Barbaz uses the Illegal Duplicate Device, he has access to Ms. Carney's actual iPhone and systems.

54.    On information and belief, Mr. Barbaz has installed certain spyware applications on Ms. Carney's iPhone without Ms. Carney's authorization.

55.    Mr. Barbaz's interference with Ms. Carney's iPhone has decreased the iPhone's disk space, reduced the iPhone's processing power, decreased the iPhone's battery life, reduced responsiveness, and has caused it to start dropping calls.

56.    Mr. Barbaz's acts with the Illegal Duplicate Device are tracked on Ms. Carney's actual iPhone and systems.  Where there is a search history, or data indexing, Mr. Barbaz's actions using the Illegal Duplicate Device are saved onto Ms. Carney's user profiles.  For example, when Mr. Barbaz signed into his remote work platform for Point72 using the Illegal Duplicate Device, that sign-in registered in Ms. Carney's web-browser history.

57.    Mr. Barbaz, on a spiteful vendetta, used the Illegal Duplicate Device to, among other things, intercept Ms. Carney's digital communications and phone calls; to interfere with Ms. Carney's Tesla; to hack into Ms. Carney's iPhone, its applications (including sensitive medical applications that deliver insulin directly to her body), and other online accounts, and; to hack into CrewBloom's accounts and systems.

### i.    Mr. Barbaz's Interference with the Tesla

58.    A Tesla owner, like Ms. Carney, can set up her personal phone as a "phone key" that communicates with the Tesla vehicle using Bluetooth.  A phone key supports automatic locking and unlocking of the Tesla vehicle and its front and rear trunks.

59.    When the two were in a relationship, Ms. Carney granted Mr. Barbaz phone key access to her Tesla from his personal phone.

60.    Mr. Barbaz is not and has never been an owner of Ms. Carney's Tesla.

61.    Ms. Carney is and has always been the sole owner of the Tesla and the only person listed on the vehicle's title.

62.    On the day she ended the engagement and relationship, Ms. Carney removed Mr. Barbaz's phone from having key access to her Tesla.  *See*, Exhibit B.

63.    Mr. Barbaz uses the Illegal Duplicate Device to covertly record the interior of Ms. Carney's Tesla, lock and unlock it, and to open its front trunk at all hours of the day and night.

64.    Mr. Barbaz has and is adjusting the Tesla's interior climate control to over 90 degrees to inflict as much discomfort and inconvenience on Ms. Carney as possible, and to damage her car.

65.    Frequently, Mr. Barbaz will open the front trunk during the middle of the night, around 4:00 AM, intentionally seeking to cause the most harm to the vehicle and the greatest harm to Ms. Carney, who has become sleep deprived by this erratic and unlawful behavior.

66.    Ms. Carney has had to instruct her assistant to stay up all night to protect the Tesla against Mr. Barbaz's hacks.

67.    Upon information and belief, Mr. Barbaz is also using the Illegal Duplicate Device to track the Tesla's (and Ms. Carney's) location.

68.    Ms. Carney has no way of stopping Mr. Barbaz from interfering with her Tesla, as he continues to use the Illegal Duplicate Device to lock, unlock, and open the front trunk on a regular and daily basis, for the purpose of tormenting Ms. Carney and putting her at extreme risk of physical danger.

69.    Mr. Barbaz intended to – and did – cause Ms. Carney significant emotional distress through these acts, which also aggravated her diabetic condition.

70.     The stress related to Mr. Barbaz's incessant interference with the Tesla caused Ms. Carney to obtain emergency medical intervention.

71.     Ms. Carney is still suffering emotional distress as a result of Mr. Barbaz's interference with her Tesla.

### ii.  Mr. Barbaz's Hacks Into Ms. Carney's Personal Applications and Accounts

72.     Using the Illegal Duplicate Device, Mr. Barbaz intercepts Ms. Carney's phone calls.

73.     Using his Illegal Duplicate Device, Mr. Barbaz routinely accesses Ms. Carney's iPhone and its applications and her Apple iCloud account.

74.     With this unauthorized access, Mr. Barbaz regularly deletes photos and messages from Ms. Carney's iPhone and from the various applications contained on it, as well as those related to the iPhone through Ms. Carney's Apple iCloud subscription.

75.     Mr. Barbaz accesses Ms. Carney's emails and, upon information and belief, reads her privileged communications with counsel and doctors, among others.

76.     Mr. Barbaz commits these illegal acts because he wants to wreak havoc on Ms. Carney and cause her mental anguish for 'daring' to leave him.

77.     One example illustrative of this motive is that Mr. Barbaz uses the Illegal Duplicate Device to "block" all potential suitors from Ms. Carney's online dating applications.

78.     Mr. Barbaz continues to regularly block Hinge users from Ms. Carney's account, as recently as August 8, 2024.

79.     Using his Illegal Duplicate Device, Mr. Barbaz routinely accesses Ms. Carney's personal Google Drive.

80.     Using the Illegal Duplicate Device, Mr. Barbaz has created fake social media profiles, fake dating profiles (including some on adult-only explicit websites), fake iCloud accounts, fake bank accounts, among other fraudulent activity, while posing as Ms. Carney.

81.     With this unauthorized access to literally all of Ms. Carney's digital property, Mr. Barbaz can (and does) view Ms. Carney's private files, download them, keep them, alter them, and impersonate her to others, among other illegal acts.

82.     Upon information and belief, Mr. Barbaz is also routinely deleting the evidence of his unlawful conduct from Ms. Carney's systems using the Illegal Duplicate Device.

### iii.  Mr. Barbaz's Hacks Into Ms. Carney's Medical Applications and Accounts

83.     Using his Illegal Duplicate Device, Mr. Barbaz routinely accesses Ms. Carney's NYU Langone MyChart application, containing her private and confidential medical data.

84.     Mr. Barbaz intentionally abuses his unauthorized access to tamper with Ms. Carney's appointments, read confidential communications about her medical state, and interfere with her access to medical care.

85.     That system contains Ms. Carney's personal health information, including: information created and received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse that relates to Ms. Carney's past, present, and future physical and mental health and condition (e.g., diagnoses, x-rays, tests results, medical prescription information); enrollment, coverage, and claims information related to the provision of her health care services; billing records evidencing her past, present, and future payments for those services; and her name, address, phone number, social security number, and other relevant information.

86.     Further, using his Illegal Duplicate Device, Mr. Barbaz has accessed Ms. Carney's Medtronic CareLink application, by which insulin is pumped directly into her body through her in-arm port.

87.     Mr. Barbaz intentionally accesses this application, where with one touch of his finger, he can interfere with Ms. Carney's insulin level and cause her serious medical complications.

88.     Every time he accesses this application, Mr. Barbaz knowingly places Ms. Carney at risk of grave bodily harm, if not death.

89.     Mr. Barbaz unlawfully accesses Ms. Carney's medical applications and accounts with the intent to terrorize Ms. Carney.

### iv.  Mr. Barbaz's Hacks Into CrewBloom's Applications and Accounts

90.     Using his Illegal Duplicate Device, Mr. Barbaz accesses CrewBloom's Google Drive and Google Workspace.

91.     With this unauthorized access, Mr. Barbaz has exported and downloaded thousands of files – including the Company's Trade Secrets – from CrewBloom's system.

92.     Mr. Barbaz knew at the time of the breakup that Ms. Carney was readying to sell the Company.

93.     Mr. Barbaz's intentional hack into the CrewBloom systems, and his intentional export of thousands of Trade Secrets, is motivated by his desire to destroy Ms. Carney's international and successful business – that she co-founded – as a means to inflict duress on Ms. Carney and CrewBloom.

94.    Mr. Barbaz, an experienced financial professional and auditor, is aware of the significant harm his illegal acts would have to any business.

95.    Mr. Barbaz also knows the grave implications of unlawfully causing this data breach at a time when the Company is preparing for acquisition.

### C. Ms. Carney and CrewBloom Put Point72 On Notice of Mr. Barbaz's Heinous Acts

96.    During the investigation, CrewBloom received evidence from Verizon and Spectrum, among others, that showed Mr. Barbaz signing into his remote work platform for Point72 using the Illegal Duplicate Device.

97.    As described above, Mr. Barbaz's use of the Illegal Duplicate Device to log into Point72 was saved directly on Ms. Carney's web history.  *See*, Exhibit C (web history showing Mr. Barbaz logging into Point72 remote work platform on November 29, 2023).

98.    Ms. Carney and CrewBloom, investigating Mr. Barbaz's breaches, obtained information that showed Mr. Barbaz logging into CrewBloom systems from the Point72 offices. *See*, Exhibit D (screenshot of Mr. Barbaz logged in through Ms. Carney's CrewBloom VPN in Hudson Yards, New York, which is the office address of Point72).

99.    On January 30, 2024, CrewBloom sent a letter to Point72, putting them on notice of Mr. Barbaz's actions using their company-owned devices, from the office, during work hours. *See*, Exhibit A (CrewBloom's corporate counsel's email to Point72 with Exhibit C as an attachment).

100.    Despite repeated follow ups over the course of several months, Point72 did not respond to the January 30 letter or to any follow up by CrewBloom's corporate counsel.

101.    Beyond the harm caused to CrewBloom by the data breach at the sensitive time of readying for sale, the fact that Mr. Barbaz has access to the illegally obtained Trade Secrets threatens to destroy CrewBloom's business.

102.    Mr. Barbaz is using the Trade Secrets he acquired by unlawful means (and for an improper purpose), which causes irreparable harm to CrewBloom.

**D.  The Present Action**

103.    In June 2024, Ms. Carney hired the undersigned attorneys to reach out to Mr. Barbaz and to follow up again with Point72, in a desperate effort to stop Mr. Barbaz from continuing this unlawful conduct.

104.    On June 24, 2024, the undersigned attorneys caused letters to be delivered by certified mail to Mr. Barbaz and to Point72.  The letters demanded that Mr. Barbaz and Point72 cease and desist from this unlawful activity and surrender devices (including the Illegal Duplicate Device) to be forensically imaged, to ensure that Mr. Barbaz can no longer hack into Ms. Carney and CrewBloom's devices and systems and to destroy all the data, information, and Trade Secrets that he misappropriated.

105.    On June 27, 2024, Point72 replied through its counsel.  Point72 claimed that it is "in the process of taking appropriate steps to preserve potentially relevant information, if any, on Point72 devices used by Mr. Braz [sic]."

106.    On July 1, 2024, a mere hours before the response deadline lapsed, Mr. Barbaz's counsel reached out and stated that they would respond by the end of the week.  The undersigned attorneys confirmed receipt of the email and awaited a response by July 5.  On July 8, after a follow up email from the undersigned, Mr. Barbaz's counsel denied the allegations.

## FIRST COUNT

### Violation of the Defend Trade Secret Act, 18 U.S.C. § 1836, *et seq.*

107.   Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

108.   The Trade Secrets are not readily available knowledge to the general public or CrewBloom competitors.

109.   The Trade Secrets have independent economic value that Plaintiffs have taken reasonable measures to keep secret.  Plaintiffs have invested over $175,000 in developing the AI Project alone.

110.   For instance, the Trade Secrets are kept on a secure Google Workspace system and password-protected so that only employees with proper credentials and clearance can access the Trade Secrets.

111.   Additionally, CrewBloom instructs its employees to maintain the confidentiality of its Trade Secrets.

112.   Further, only employees with a need to know the Trade Secrets have access to the Trade Secrets

113.   Defendant misappropriated the Trade Secrets under 18 U.S.C. § 1836, *et seq.*  The Trade Secrets are used in interstate commerce, as Plaintiffs use them to provide services to clients nationwide and across the world.

114.   Defendant knew that the Trade Secrets were acquired by improper means.

115.   Using the Illegal Duplicate Device, Defendant acquired the Trade Secrets by illegally accessing, and then unlawfully exporting them, from CrewBloom systems and used them for his personal benefit to torment Ms. Carney and cause harm to her business.

116.   Defendant's misappropriation was willful and malicious.

117.    Defendant's misappropriation of the Trade Secrets has directly and proximately caused injury to Plaintiffs, which is immediate and irreparable, and for which Plaintiffs are entitled to equitable relief and damages.

## SECOND COUNT

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "CFAA")**

118.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

119.    Defendant violated the CFAA under 18 U.S.C. § 1030, *et seq.*

120.    Using the Illegal Duplicate Device, Defendant accessed Plaintiffs' protected computers and systems knowingly and with the intent to defraud.

121.    Defendant obtained such access, knowingly and with the intent to defraud, without Plaintiffs' authorization.

122.    While illegally on Plaintiffs' computers and systems, Defendant furthered his intended fraud and obtained Trade Secrets, among other things of value.

123.    Defendant's acts caused a loss of far more than $5,000 in value, in less than a one-year period.

124.    Plaintiffs have spent well over $5,000 worth of money, time, and resources to conduct a damage assessment and restore the data, program, system and information to its prior condition, both internally and by hiring third parties to do so.  Plaintiffs had to repurchase multiple devices in attempts to block Defendant's unlawful access to their systems.  While engaged in these mitigation efforts, Plaintiffs lost revenue, incurred costs, and suffered consequential damages.

125.    Ms. Carney has also suffered mental and emotional damages as a result of Defendant's conduct.

### THIRD COUNT

**Violation of the Wiretap Act, 18 U.S.C. § 2510, *et. seq.* (the "FWA")**

126.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

127.    Defendant violated the FWA under 18 U.S.C. § 2510, *et seq.*

128.    Defendant intentionally intercepted electronic communications.

129.    By use of the Illegal Duplicate Device, Defendant intentionally accessed, viewed, downloaded, and responded (among other actions constituting interception) to electronic communications intended for Plaintiffs.

130.    Defendant intercepted electronic communications from, at least: Ms. Carney's iPhone and <u>all</u> of the applications on it, including communications with her attorneys and doctors, among others; Ms. Carney's medical applications; Ms. Carney's Tesla; and CrewBloom's systems, emails, and intra-Company messaging channels, which contained Trade Secrets and other proprietary, confidential information.

131.    Defendant acted intentionally using the Illegal Duplicate Device he created for this very purpose.

132.    Defendant's conduct has caused Plaintiffs immeasurable and actual monetary harms, as well as significant emotional damage to Ms. Carney.

## FOURTH COUNT

**Violation of the Stored Communications Act 18 U.S.C. § 2701, *et. seq.* (the "SCA")**

133.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

134.    Defendant violated the SCA under 18 U.S.C. § 2701, *et seq.*

135.    Defendant intentionally accessed Plaintiffs' computer systems without Plaintiffs' authorization.

136.    Using the Illegal Duplicate Device, Defendant acted with the intent to access Plaintiffs' systems without Plaintiffs' knowledge, approval, or consent.

137.    Defendant obtained, altered, and prevented authorized access to a wire or electronic communications while in storage in these facilities.

138.    Using the Illegal Duplicate Device, Defendant obtained Trade Secrets, in addition to other confidential files that are electronically communicated among CrewBloom employees.

139.    Using the Illegal Duplicate Device, Defendant made alterations to electronic communications by deleting messages, among other information, and blocking functions on certain applications.

140.    Using the Illegal Duplicate Device, Defendant accessed Ms. Carney's private medical applications by which NYU Langone, among others, communicate sensitive healthcare data to Ms. Carney.

141.    Using the Illegal Duplicate Device, Defendant accessed Plaintiffs' emails, obtaining and altering those communications while in storage.

142.    In each case, Defendant prevented authorized access to these facilities by Plaintiffs, the rightful owners of the facilities.

143.    Defendant has caused Plaintiffs both actual and unquantifiable damages by their unlawful conduct, including the intentional infliction of considerable mental anguish upon Ms. Carney.

## FIFTH COUNT

### Misappropriation of Trade Secrets

144.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

145.    Defendant misappropriated the Trade Secrets under New York common law.

146.    The Trade Secrets have independent economic value that Plaintiffs have taken reasonable measures to keep secret.

147.    Defendant knew that the Trade Secrets were acquired by improper means.

148.    Defendant acquired the Trade Secrets using the Illegal Duplicate Device.

149.    Using the Illegal Duplicate Device, Defendant acquired the Trade Secrets by illegally accessing, and then unlawfully exporting them, from CrewBloom systems and used them for his personal benefit to torment Ms. Carney and cause harm to her business.

150.    Defendant used the Trade Secrets at least for his personal benefit.

151.    Defendant's misappropriation was willful and malicious.

152.    Defendant's misappropriation of the Trade Secrets has directly and proximately caused injury to Plaintiffs, which is immediate and irreparable.

## SIXTH COUNT

### Tortious Interference

153.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

154.    Defendant tortiously interfered with CrewBloom's prospective contractual relations under New York common law.

155.    CrewBloom has been in the process of exploring a sale of the business with acquisition firms and had a relationship with these acquisition firms.

156.    Defendant was aware of CrewBloom's business relationships with third-party acquisition firms.

157.    Defendant intentionally interfered with those relationships by causing a data breach.  He created and used the Illegal Duplicate Device to access CrewBloom's systems and illegally export thousands of Trade Secrets, among other confidential information.

158.    Defendant's acts were done with malice and illegal means that amount to a crime and independent torts.

159.    As a result of Defendant's acts, CrewBloom's relationships with the third-party acquisition firms have been irreparably damaged.

160.    Defendant's conduct has caused significant damage to CrewBloom, which is certain and incalculable.


### SEVENTH COUNT

**Intentional Infliction of Emotional Distress**

161.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

162.    Defendant intentionally inflicted emotional distress upon Ms. Carney, in violation of New York common law.

163.    Defendant engaged in extreme and outrageous conduct by creating the Illegal Duplicate Device and using it to access Plaintiffs' systems, devices, applications, Trade Secrets, and Ms. Carney's Tesla.

164.    Defendant's conduct is appalling and goes beyond all possible bounds of decency: for two examples, he is loitering on Ms. Carney's Medtronic application (where he could cause her grave bodily harm), and he is tampering with her Tesla (which could result in grave physical injury to her or cause her death).

165.    Defendant reads Ms. Carney's privileged communications with her lawyers and her doctors, as well as every private message she receives.

166.    Defendant intercepts Ms. Carney's phone calls.

167.    Defendant creates fake accounts in Ms. Carney's name, including accounts with banks and on explicit adult websites.

168.    Defendant has also blocked every dating opportunity that Ms. Carney has had since she ended their relationship.

169.    Defendant's acts are purposeful and intended to cause Ms. Carney severe emotional distress.

170.    Through his heinous pattern of harassment, Defendant has caused Ms. Carney severe emotional distress, aggravated her diabetes and caused other physical harms, and extreme mental anguish.


**EIGHTH COUNT**

**Conversion (as to the Tesla)**

171.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

172.    Defendant committed conversion in violation of New York common law.

173.    Ms. Carney has the right to possess the Tesla, and she alone is the titled owner.

174.    Defendant intentionally used the Illegal Duplicate Device to gain phone key access to the Tesla, *after* Ms. Carney revoked his access to the Tesla on the day she ended their relationship, to interfere with Ms. Carney's property rights.

175.    Defendant has, on a continued and near-daily basis spanning months, used the Illegal Duplicate Device to lock and unlock the Tesla, and to open the front trunk at all hours of the day and night.

176.    With his illegal access, Defendant has also recorded the interior of the Tesla. Further, Defendant can track the Tesla's location using his Illegal Duplicate Device.

177.    Defendant's actions present a significant risk to Ms. Carney's physical safety.

178.    Defendant acted with malice, with the knowledge of Ms. Carney's rights and a deliberate intent to interfere with them.

179.    Ms. Carney has been forced to stay up all night and to instruct her assistant to spend time guarding the Tesla (during the night hours) against Defendant's continual opening of the front trunk and unlocking the car.

180.    Defendant has, and continues to exercise, dominion over Ms. Carney's Tesla to the exclusion of Plaintiff's superior possessory rights and to the detriment of the Tesla's condition.

181.    As a result of Defendant's unlawful interference with the Tesla, the vehicle has sustained actual damage.

182.    The battery life of the Tesla has been significantly compromised due to Defendant's interference.

183.    Ms. Carney has endured mental and emotional damages and suffered actual damages as a result of Defendant's unlawful interference.

## NINTH COUNT

**Conversion (as to Ms. Carney's Cell Phone, Personal Electronic Data, and CrewBloom's Confidential Data)**

184.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

185.    Defendant committed conversion in violation of New York common law.

186.    Ms. Carney has the right to possess her cell phone and her personal and professional data.

187.    Ms. Carney has superior right to her cell phone, her various electronic data, and all CrewBloom professional data.

188.    Defendant intentionally used the Illegal Duplicate Device to impersonate, download, duplicate, download and delete Ms. Carney's private electronic data, applications, systems and CrewBloom's confidential information and Trade Secrets.

189.    Defendant, on a continued and near-daily basis spanning months, has and continues to use the Illegal Duplicate Device to monitor Ms. Carney's iPhone usage on her various applications and social media accounts, download applications to Ms. Carney's iPhone which she does not want onto her iPhone, and delete applications and files from Ms. Carney's iPhone, including CrewBloom confidential and personal information.

190.    Defendant acted with malice, with the knowledge of Ms. Carney's rights and a deliberate intent to interfere with them.

191.    Defendant's unlawful interference with Ms. Carney's superior possessory right to her cell phone and electronic data using the Illegal Duplicate Device, including by downloading

unwanted applications to Ms. Carney's cell phone and deleting Ms. Carney's personal data, constitutes unauthorized dominion over Ms. Carney's cell phone and electronic data to the exclusion of her rights.

192.    As a result of Defendant's unlawful interference with Ms. Carney's cell phone and personal data, the phone and Ms. Carney's personal data have sustained actual damage, including the deletion of Ms. Carney's private messages and pictures.

193.    Ms. Carney has endured mental and emotional damages and suffered actual damages as a result of Defendant's illegal actions using the Illegal Duplicate Device.


## TENTH COUNT

### Trespass to Chattels (as to Ms. Carney's Tesla)

194.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

195.    Defendant violated New York common law by committing trespass to chattel.

196.    Defendant, without justification or consent, physically interfered with Ms. Carney's use and enjoyment of her Tesla.

197.    Using the Illegal Duplicate Device, Defendant intentionally interfered with the Tesla by locking, unlocking, and opening the front trunk.

198.    Defendant also remotely runs the internal climate control of the Tesla at over 90 degrees Fahrenheit on hot days. This drains the Tesla's battery and has damaged it to the point where the battery is no longer functioning normally.

199.    Defendant's trespasses to Ms. Carney's Tesla has impaired the condition and value of the Tesla.

200.    Ms. Carney has suffered emotional damages, and actual damages to the Tesla.

**ELEVENTH COUNT**

**Trespass to Chattels (as to Ms. Carney's Cell Phone, Personal Electronic Data and CrewBloom's Confidential Data)**

201.    Plaintiffs repeat and reallege the preceding paragraphs of the Complaint as if more fully stated here.

202.    Defendant violated New York common law by committing trespass to chattel.

203.    Defendant, without justification or consent, has used and continues to use the Illegal Duplicate Device to interfere with Ms. Carney's use and enjoyment of her cell phone and electronic data, including confidential CrewBloom information.

204.    Using the Illegal Duplicate Device, Defendant has and continues to intentionally interfere with Ms. Carney's cell phone by installing unwanted applications on the cell phone, meddling with Ms. Carney's social media accounts, and deleting Ms. Carney's electronic data.

205.    Defendant's interference with Ms. Carney's cell phone via installing unauthorized spyware applications has decreased her mobile device's available space, processing power, battery life, and has reduced the cell phone's responsiveness.

206.    Additionally, after the installation of these unauthorized applications, Ms. Carney's cell phone began dropping Ms. Carney's phone calls.

207.    Defendant's trespasses to Ms. Carney's cell phone and personal data have impaired the condition and value of Ms. Carney's cell phone, social media accounts and deprived Ms. Carney of certain electronic data.

208.    Ms. Carney has suffered actual damages to her cell phone, been deprived of personal and CrewBloom electronic data, and suffered emotional damages as a result of Defendant's trespasses.

## **ATTORNEYS' FEES**

Plaintiffs retained counsel to redress the significant damage caused by Defendant, including the recovery of CrewBloom's Trade Secrets. Pursuant to the DTSA, FWA, and SCA, among other bases, Plaintiffs are entitled to and seek recovery of all of their costs and expenses, including reasonable attorneys' fees.

## **JURY DEMAND**

Plaintiffs demand a jury trial under Federal Rule of Civil Procedure 38(b).

## **PRAYER FOR RELIEF**

Plaintiffs demand relief against Defendant as follows:

A. Enjoining and restraining Defendant, and all acting in concert with Defendant, from:

    a. using the Illegal Duplicate Device; and

    b. using or disclosing any of the Trade Secrets (whether in whole or in part).

B. Requiring Defendant to:

    a. submit all devices used by Defendant (both personal and those issued to him by Point72) to undergo a forensic imaging by a third-party vendor;

    b. return the Illegal Duplicate Device and ultimately (after delivering copies of all data, information, and documents to Plaintiffs) destroy the Illegal Duplicate Device and all remaining copies of the Trade Secrets and any other of the Plaintiffs' information; and

    c. identify all persons to whom the Trade Secrets have been disclosed.

C. Entering an award in favor of Plaintiffs including:

    a. their actual and consequential damages;

    b.   exemplary damages in double the amount of damages pursuant to the DTSA;

    c.   punitive damages;

    d.   attorneys' fees and costs; and

    e.   such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated:        New York, New York
              August 27, 2024

**ROMANO LAW PLLC**

By: ___*/s/ David Fish*_____
       David Fish
       Andrew Ramstad
       Ellie Sanders
One Battery Park Plaza, 7th Floor
New York, New York 10004
Phone: (212) 865-9848
Fax:    (646) 661-4599
Email: davidf@romanolaw.com
       andrew@romanolaw.com
       ellie@romanolaw.com

*Attorneys for Brianna Carney and CrewBloom LLC*