Albert J. Soler (AS1974)
Ajoe P. Abraham (AA7000)
SOLER LEGAL LLC
270 W. 39th St., Suite 1304
New York, NY 10018
Tel: (646) 660-1961
Email: asoler@solerlegal.com
Email: aabraham@solerlegal.com

*Attorneys for Defendant Alec Michael Barbaz*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIANNA CARNEY AND CREWBLOOM LLC,<br> Plaintiffs,<br><br>v.<br><br>ALEC MICHAEL BARBAZ,<br> Defendant. | Case No.: 1:24-cv-05362<br><br>**VERIFIED ANSWER AND COUNTERCLAIMS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant Alec Michael Barbaz ("Defendant" or "Barbaz"), through its undersigned attorneys, Soler Legal LLC, answers the allegations of plaintiffs' First Amended Complaint filed on August 27, 2024 ("FAC") by Plaintiffs Brianna Carney ("Carney"), an individual, and Crewbloom LLC ("CrewBloom") (each a "Plaintiff" and, collectively, "Plaintiffs"), as follows:

### <u>NATURE OF THE ACTION</u>

1.     Defendant denies the allegations of paragraph 1 of the FAC but admits that Defendant had a prior personal relationship with Plaintiff Carney.

2.      Defendant denies the allegations in paragraph 2 of the FAC.

3.      Defendant denies the allegations in paragraph 3 of the FAC.

4.      Defendant denies the allegations in paragraph 4 of the FAC.

5.      Defendant denies the allegations in paragraph 5 of the FAC.

6.      Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 6 of the FAC.

7.      Defendant denies the allegations in paragraph 7 of the FAC.

8.      Defendant denies the allegations in paragraph 8 of the FAC.

9.      Defendant denies the allegations in paragraph 9 of the FAC.

10.      Defendant denies the allegations in paragraph 10 of the FAC.

11.      Defendant denies the allegations in paragraph 11 of the FAC.

12.      Defendant denies the allegations in paragraph 12 of the FAC.

13.      Defendant denies the allegations in paragraph 13 of the FAC.

14.      Defendant denies the allegations in paragraph 14 of the FAC.

15.      Defendant denies the allegations in paragraph 15 of the FAC.

16.      Defendant denies the allegations in paragraph 16 of the FAC.

17.      Defendant denies the allegations in paragraph 17 of the FAC.

18.      Defendant denies that Plaintiff is entitled to any relief, including any request for relief as set forth in paragraph 18 of the FAC.

## THE PARTIES

19.      Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 19 of the FAC.

20.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 20 of the FAC.

21.     Defendant admits the allegations in paragraph 21 of the FAC.

## JURISDICTION AND VENUE

22.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 22 of the FAC.

23.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 23 of the FAC.

24.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 24 of the FAC.

## FACTUAL BACKGROUND

25.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 25 of the FAC.

26.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 26 of the FAC.

27.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 27 of the FAC.

28.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 28 of the FAC.

29.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 29 of the FAC.

30.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 30 of the FAC.

31.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 31 of the FAC.

32.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 32 of the FAC.

33.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 33 of the FAC.

34.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 34 of the FAC.

35.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 35 of the FAC.

36.    Defendant admits that Defendant is employed by Point72 as the company's Internal Audit Manager but notes that Defendant has been placed on administrative leave due to Plaintiff Carney's baseless accusations against Defendant.

37.    Defendant denies the allegations of paragraph 37 of the FAC but admits that Defendant had a prior personal relationship with Plaintiff Carney.

38.    Defendant denies the allegations of paragraph 38 of the FAC but admits that the Parties' prior personal relationship did, in fact, end.

39.    Defendant denies the allegations in paragraph 39 of the FAC.

40.    Defendant denies the allegations in paragraph 40 of the FAC.

41.    Defendant denies the allegations in paragraph 41 of the FAC.

42.    Defendant denies the allegations in paragraph 42 of the FAC but admits that the Defendant had sought and obtained an order of protection against Plaintiff Carney in Kings County Family Court.

43.     Defendant denies the allegations in paragraph 43 of the FAC.

44.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 44 of the FAC.

45.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 45 of the FAC.

46.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 46 of the FAC.

47.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 47 of the FAC.

48.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 48 of the FAC.

49.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 49 of the FAC.

50.     Defendant denies the allegations in paragraph 50 of the FAC.

51.     Defendant denies the allegations in paragraph 51 of the FAC.

52.     Defendant denies the allegations in paragraph 52 of the FAC.

53.     Defendant denies the allegations in paragraph 53 of the FAC.

54.     Defendant denies the allegations in paragraph 54 of the FAC.

55.     Defendant denies the allegations in paragraph 55 of the FAC.

56.     Defendant denies the allegations in paragraph 56 of the FAC.

57.     Defendant denies the allegations in paragraph 57 of the FAC.

58.     Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 58 of the FAC.

59.    Defendant denies the allegations in paragraph 59 of the FAC.

60.    Defendant admits the allegations in paragraph 60 of the FAC.

61.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 61 of the FAC.

62.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 62 of the FAC.

63.    Defendant denies the allegations in paragraph 63 of the FAC.

64.    Defendant denies the allegations in paragraph 64 of the FAC.

65.    Defendant denies the allegations in paragraph 65 of the FAC.

66.    Defendant denies the allegations in paragraph 66 of the FAC.

67.    Defendant denies the allegations in paragraph 67 of the FAC.

68.    Defendant denies the allegations in paragraph 68 of the FAC.

69.    Defendant denies the allegations in paragraph 69 of the FAC.

70.    Defendant denies the allegations in paragraph 70 of the FAC.

71.    Defendant denies the allegations in paragraph 71 of the FAC.

72.    Defendant denies the allegations in paragraph 72 of the FAC.

73.    Defendant denies the allegations in paragraph 73 of the FAC.

74.    Defendant denies the allegations in paragraph 74 of the FAC.

75.    Defendant denies the allegations in paragraph 75 of the FAC.

76.    Defendant denies the allegations in paragraph 76 of the FAC.

77.    Defendant denies the allegations in paragraph 77 of the FAC.

78.    Defendant denies the allegations in paragraph 78 of the FAC.

79.    Defendant denies the allegations in paragraph 79 of the FAC.

80.    Defendant denies the allegations in paragraph 80 of the FAC.

81.    Defendant denies the allegations in paragraph 81 of the FAC.

82.    Defendant denies the allegations in paragraph 82 of the FAC.

83.    Defendant denies the allegations in paragraph 83 of the FAC.

84.    Defendant denies the allegations in paragraph 84 of the FAC.

85.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 85 of the FAC.

86.    Defendant denies the allegations in paragraph 86 of the FAC.

87.    Defendant denies the allegations in paragraph 87 of the FAC.

88.    Defendant denies the allegations in paragraph 88 of the FAC.

89.    Defendant denies the allegations in paragraph 89 of the FAC.

90.    Defendant denies the allegations in paragraph 90 of the FAC.

91.    Defendant denies the allegations in paragraph 91 of the FAC.

92.    Defendant denies the allegations in paragraph 92 of the FAC.

93.    Defendant denies the allegations in paragraph 93 of the FAC.

94.    Defendant denies the allegations in paragraph 94 of the FAC.

95.    Defendant denies the allegations in paragraph 95 of the FAC.

96.    Defendant denies the allegations in paragraph 96 of the FAC.

97.    Defendant denies the allegations in paragraph 97 of the FAC.

98.    Defendant denies the allegations in paragraph 98 of the FAC.

99.    Defendant denies the allegations in paragraph 99 of the FAC but admits that Defendant did receive a letter from Plaintiff Carney "c/o Point72 Asset Management" dated June

24, 2024 asserting the same baseless and outlandish accusations levied by Plaintiffs against Defendant in the FAC.

100.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 100 of the FAC.

101.    Defendant denies the allegations in paragraph 101 of the FAC.

102.    Defendant denies the allegations in paragraph 102 of the FAC.

103.    Defendant denies the allegations in paragraph 103 of the FAC.

104.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 104 of the FAC.

105.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 105 of the FAC.

106.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 106 of the FAC.

## FIRST COUNT
### Violation of the Defend Trade Secret Act, 18 U.S.C. § 1836, et seq.

107.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

108.    Defendant denies the allegations in paragraph 108 of the FAC.

109.    Defendant denies the allegations in paragraph 109 of the FAC.

110.    Defendant denies the allegations in paragraph 110 of the FAC.

111.    Defendant denies the allegations in paragraph 111 of the FAC.

112.    Defendant denies the allegations in paragraph 112 of the FAC.

113.    Defendant denies the allegations in paragraph 113 of the FAC.

114.    Defendant denies the allegations in paragraph 114 of the FAC.

115.    Defendant denies the allegations in paragraph 115 of the FAC.

116.    Defendant denies the allegations in paragraph 116 of the FAC.

117.    Defendant denies the allegations in paragraph 117 of the FAC.

## SECOND COUNT
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. (the "CFAA")

118.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

119.    Defendant denies the allegations in paragraph 119 of the FAC.

120.    Defendant denies the allegations in paragraph 120 of the FAC.

121.    Defendant denies the allegations in paragraph 121 of the FAC.

122.    Defendant denies the allegations in paragraph 122 of the FAC.

123.    Defendant denies the allegations in paragraph 123 of the FAC.

124.    Defendant denies the allegations in paragraph 124 of the FAC.

125.    Defendant denies the allegations in paragraph 125 of the FAC.

## THIRD COUNT
### Violation of the Wiretap Act, 18 U.S.C. § 2510, et. seq. (the "FWA")

126.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

127.    Defendant denies the allegations in paragraph 127 of the FAC.

128.    Defendant denies the allegations in paragraph 128 of the FAC.

129.    Defendant denies the allegations in paragraph 129 of the FAC.

130.    Defendant denies the allegations in paragraph 130 of the FAC.

131.    Defendant denies the allegations in paragraph 131 of the FAC.

132.    Defendant denies the allegations in paragraph 132 of the FAC.

## FOURTH COUNT
### Violation of the Stored Communications Act 18 U.S.C. § 2701, et. seq. (the "SCA")

133.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

134.    Defendant denies the allegations in paragraph 134 of the FAC.

135.    Defendant denies the allegations in paragraph 135 of the FAC.

136.    Defendant denies the allegations in paragraph 136 of the FAC.

137.    Defendant denies the allegations in paragraph 137 of the FAC.

138.    Defendant denies the allegations in paragraph 138 of the FAC.

139.    Defendant denies the allegations in paragraph 139 of the FAC.

140.    Defendant denies the allegations in paragraph 140 of the FAC.

141.    Defendant denies the allegations in paragraph 141 of the FAC.

142.    Defendant denies the allegations in paragraph 142 of the FAC.

143.    Defendant denies the allegations in paragraph 143 of the FAC.

## FIFTH COUNT
### Misappropriation of Trade Secret

144.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

145.    Defendant denies the allegations in paragraph 145 of the FAC.

146.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 146 of the Complaint.

147.    Defendant denies the allegations in paragraph 147 of the FAC.

148.    Defendant denies the allegations in paragraph 148 of the FAC.

149.    Defendant denies the allegations in paragraph 149 of the FAC.

150.    Defendant denies the allegations in paragraph 150 of the FAC.

151.    Defendant denies the allegations in paragraph 151 of the FAC.

152.    Defendant denies the allegations in paragraph 152 of the FAC.

## SIXTH COUNT
### Tortious Interference

153.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

154.    Defendant denies the allegations in paragraph 154 of the FAC.

155.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 155 of the FAC.

156.    Defendant denies the allegations in paragraph 156 of the FAC.

157.    Defendant denies the allegations in paragraph 157 of the FAC.

158.    Defendant denies the allegations in paragraph 158 of the FAC.

159.    Defendant denies the allegations in paragraph 159 of the FAC.

160.    Defendant denies the allegations in paragraph 160 of the FAC.

## SEVENTH COUNT
### Intentional Infliction of Emotional Distress

161.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

162.    Defendant denies the allegations in paragraph 162 of the FAC.

163.    Defendant denies the allegations in paragraph 163 of the FAC.

164.    Defendant denies the allegations in paragraph 164 of the FAC.

165.    Defendant denies the allegations in paragraph 165 of the FAC.

166.    Defendant denies the allegations in paragraph 166 of the FAC.

167.    Defendant denies the allegations in paragraph 167 of the FAC.

168.    Defendant denies the allegations in paragraph 168 of the FAC.

169.    Defendant denies the allegations in paragraph 169 of the FAC.

170.    Defendant denies the allegations in paragraph 170 of the FAC.

## EIGHTH COUNT
### Conversion (as to the Tesla)

171.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

172.    Defendant denies the allegations in paragraph 172 of the FAC.

173.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 173 of the Complaint.

174.    Defendant denies the allegations in paragraph 174 of the FAC.

175.    Defendant denies the allegations in paragraph 175 of the FAC.

176.    Defendant denies the allegations in paragraph 176 of the FAC.

177.    Defendant denies the allegations in paragraph 177 of the FAC.

178.    Defendant denies the allegations in paragraph 178 of the FAC.

179.    Defendant denies the allegations in paragraph 179 of the FAC.

180.    Defendant denies the allegations in paragraph 180 of the FAC.

181.    Defendant denies the allegations in paragraph 181 of the FAC.

182.    Defendant denies the allegations in paragraph 182 of the FAC.

183.    Defendant denies the allegations in paragraph 183 of the FAC.

## NINTH COUNT
**Conversion (as to Ms. Carney's Cell Phone, Personal Electronic Data, and CrewBloom's Confidential Data)**

184.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

185.    Defendant denies the allegations in paragraph 185 of the FAC.

186.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 186 of the FAC.

187.    Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 187 of the FAC.

188.    Defendant denies the allegations in paragraph 188 of the FAC.

189.    Defendant denies the allegations in paragraph 189 of the FAC.

190.    Defendant denies the allegations in paragraph 190 of the FAC.

191.    Defendant denies the allegations in paragraph 191 of the FAC.

192.    Defendant denies the allegations in paragraph 192 of the FAC.

193.    Defendant denies the allegations in paragraph 193 of the FAC.

## TENTH COUNT
**Trespass to Chattels (as to Ms. Carney's Tesla)**

194.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

195.    Defendant denies the allegations in paragraph 195 of the FAC.

196.    Defendant denies the allegations in paragraph 196 of the FAC.

197.    Defendant denies the allegations in paragraph 197 of the FAC.

198.    Defendant denies the allegations in paragraph 198 of the FAC.

199.    Defendant denies the allegations in paragraph 199 of the FAC.

200.    Defendant denies the allegations in paragraph 200 of the FAC.

**ELEVENTH COUNT**
**Trespass to Chattels (as to Ms. Carney's Cell Phone, Personal Electronic Data, and CrewBloom's Confidential Data)**

201.    Defendant repeats and incorporates by reference its responses to the allegations contained in the preceding paragraphs of this Verified Answer and Counterclaims as if fully set forth herein.

202.    Defendant denies the allegations in paragraph 202 of the FAC.

203.    Defendant denies the allegations in paragraph 203 of the FAC.

204.    Defendant denies the allegations in paragraph 204 of the FAC.

205.    Defendant denies the allegations in paragraph 205 of the FAC.

206.    Defendant denies the allegations in paragraph 206 of the FAC.

207.    Defendant denies the allegations in paragraph 207 of the FAC.

208.    Defendant denies the allegations in paragraph 208 of the FAC.

## ATTORNEYS' FEES

Defendant denies each and every allegation set forth in this paragraph and denies that Plaintiffs are entitled to any recovery of any costs and expenses, including attorneys' fees, in connection with this baseless and frivolous lawsuit and Defendant will be seeking all applicable and equitable sanctions against Plaintiffs.

## PRAYER FOR RELIEF

Defendant repeats and incorporates by reference Defendant's responses to allegations contained in the preceding paragraphs as if fully set forth herein.

A.    Defendant denies Plaintiffs are entitled to any relief sought in paragraph A of Plaintiffs' prayer for relief and subsections (a) and (b) including any injunctive relief sought therein but acknowledges that the Court has issued an order in connection with Plaintiffs' motion for emergency relief.

B.    Defendant denies Plaintiffs are entitled to any relief sought in paragraph B and subsections (a) through (c) of Plaintiffs' prayer for relief.

C.    Defendant denies Plaintiffs are entitled to any relief sought in paragraph C and subsections (a) through (e) of Plaintiffs' prayer for relief.

## AFFIRMATIVE DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendant further pleads the following separate and additional defenses in connection with this lawsuit and dispute.  Defendant reserves the right to assert such affirmative defenses as discovery in this matter may deem proper. For its affirmative defenses, Defendant alleges on information and belief that:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

15

Plaintiffs' FAC, and each and every cause of action therein, fails to set forth facts sufficient to state a cause of action against Defendant.

### SECOND AFFIRMATIVE DEFENSE
**(Unclean Hands)**

Plaintiffs' FAC, and each and every cause of action therein, are barred by reason of Plaintiffs' own unclean hands.

### THIRD AFFIRMATIVE DEFENSE
**(Plaintiffs' Wrongful Conduct)**

Plaintiffs' FAC, and each and every cause of action therein, are barred by reason of Plaintiffs' own wrongful and retaliatory conduct.

### FOURTH AFFIRMATIVE DEFENSE
**(Excuse/Justification)**

Any and all conduct, acts, and/or omissions committed by Plaintiffs as alleged in Plaintiffs' FAC were excused and/or justified.

### FIFTH AFFIRMATIVE DEFENSE
**(Laches)**

Plaintiffs' FAC, and each and every cause of action therein, are barred under the doctrine of laches, insofar as, among other things, Plaintiffs have unreasonably delayed seeking relief.

### SIXTH AFFIRMATIVE DEFENSE
**(Good Faith)**

Defendant alleges that Defendant has, at all times relevant to Plaintiffs' FAC, acted equitably and in good faith, with innocent intent and without malice, fraud, or oppression and accordingly, punitive damages are neither available nor appropriate in this action.

### SEVENTH AFFIRMATIVE DEFENSE
**(Estoppel)**

Plaintiffs are estopped from asserting any of the causes of action asserted in Plaintiffs' FAC.

### EIGHTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiffs' FAC, and each and every cause of action therein, are barred by the doctrine of waiver.

### NINTH AFFIRMATIVE DEFENSE
### (Bad Faith Filing of a Frivolous Claim)

Plaintiffs' FAC, and each and every purported cause of action or claim for relief therein, are frivolous and baseless and have been asserted by Plaintiffs without justification and solely for the purpose of, among other things, (a) harassing and defaming Defendant and (b) causing irreversible personal and professional harm to Defendant.  Accordingly, Plaintiffs are liable for the payment of Defendant's reasonable expenses, costs, attorneys' fees and punitive damages in connection with the filing of this Verified Answer and Counterclaims and ongoing defense of this action.

### TENTH AFFIRMATIVE DEFENSE
### (Damages are Non-Existent, Speculative, or Uncertain)

Plaintiffs' FAC is barred or diminished, in whole or in part, to the extent that Plaintiffs' damages are non-existent, speculative and/or uncertain.

### ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiffs' FAC is barred or diminished, in whole, or in part, to the extent that Plaintiffs failed to mitigate and/or attempt to mitigate its damages, if any.

### TWELFTH AFFIRMATIVE DEFENSE
### (No Causation)

To the extent that Plaintiffs have sustained damages, which Defendant patently denies and which Plaintiffs have yet to establish, any act, conduct, or omission on the part of Defendant was neither a substantial factor in bringing about, nor a contributing cause of, such damage.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Reservation of Defenses)

Defendant reserves the right to assert additional defenses to which Defendant may be entitled under the law, including case law, statutes, and rules of jurisdictions whose law may be found to apply to the claims asserted in the Plaintiffs' FAC.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for relief as follows:

A.  That Plaintiffs take nothing by way of Plaintiffs' FAC;

B.  That Defendant be awarded costs of the lawsuit incurred in responding to Plaintiff's FAC;

C.  That Defendant recover his attorney's fees, costs, and any other such damages, including punitive damages and sanctions, to the fullest extent permitted by law;

D.  That Defendant be granted such other and further relief as the Court may deem just and proper, including, among other things, punitive damages and sanctions.

## COUNTERCLAIMS

Defendant/Counter-Claimant, Alec Michael Barbaz (herein "Defendant/Counter-Claimant" or "Barbaz"), by his attorneys, Soler Legal LLC, for his Counterclaims against Plaintiffs/Counter-Defendants Brianna Carney ("Carney"), an individual, and CrewBloom LLC ("CrewBloom") (each a "Plaintiff/Counter-Defendant" and, collectively, "Plaintiffs/Counter-Defendants"), alleges as follows:

## PARTIES

1.     Defendant/Counter-Claimant, Alec Michael Barbaz, is an individual residing in the State of New York.

2.     On information and belief, Plaintiff/Counter-Defendant, Brianna Carney, is an individual residing in the State of New York.

3.     On information and belief, Plaintiff/Counter-Defendant, CrewBloom LLC, is New York limited liability company with its principal place of business in Manhattan, New York.

## JURISDICTION AND VENUE

4.     This Court has ancillary jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) and Fed. R. Civ. Pro. R. 13(a).

5.     Venue is proper in this judicial district for all causes of action pursuant to 28 U.S.C. §§1391(b) and (c) in that Plaintiffs/Counter-Defendants transact business in this Judicial District and a substantial part of the events or omissions giving rise to the claims herein occurred within this Judicial District. Indeed, Plaintiffs/Counter-Defendants' defamatory content, for example, was directed to individuals and parties located in the State of New York.

## GENERAL ALLEGATIONS

A.  The End of a Toxic Relationship

6.     In or around 2021, Defendant/Counter-Claimant Alec Barbaz and Plaintiff/Counter-Defendant Brianna Carney embarked on a personal relationship and were, at one point, engaged to be married.  Eventually, with the passage of time and with a better understanding of Carney's personality, tendencies, and nature, Barbaz ultimately concluded, correctly, that Barbaz and Carney were incompatible with one another and, as with most toxic relationships, the former couple ended their relationship on or around November or December of 2023.

B.  Carney Unleashes an *Admittedly* Retaliatory and Vengeful Campaign Against Defendant

7.      Following the couple's breakup, Carney unleashed a baseless, defamatory, and retaliatory campaign against Barbaz solely to harass Barbaz and, in the process, smear his good name, reputation, and future economic prospects.

8.      In fact, as discussed herein, Carney admitted in an email to Defendant dated December 6, 2023, that Carney's intentional conduct was fueled by, among other things, a desire and need to exact revenge upon Barbaz following the former couples' breakup.

9.      Perhaps the most damaging statement contained in Carney's December 6 Email is Carney's admission that the "…worst part about everything that's happening is this *all-consuming rage that I can only escape when plotting ways to get revenge*." (*emphasis* added).  Carney's intent and motivation for her lawsuit against Barbaz was clear and evident for months prior to the initiation of Plaintiffs/Counter-Defendants' baseless lawsuit against Barbaz.

10.     In the same December 6 Email, Carney also admits to, and acknowledges, the all-consuming rage Carney felt towards Barbaz.  Specifically, in her email, Carney admits that following the couple's breakup Carney had packed Barbaz's personal belongings "without shedding a tear, *fueled by rage and a feminist breakup playlist*." (*emphasis* added).

11.     Carney's own words and admissions support Barbaz's contention that this action is nothing more than a means of exacting vengeful retaliation against Barbaz.  Plaintiffs/Counter-Defendants also maliciously targeted Barbaz's employer, Point72, on at least two occasions via letter asserting the same outlandish, defamatory, and baseless accusations against Barbaz, including threats of legal action against Point72 due to Barbaz's purported, yet unsupported, bad acts and misconduct.

12.     As a result, Barbaz was placed, and remains, on administrative leave with his employer and his reputation has been irreparably damaged.

13.     As discussed herein, Plaintiffs/Counter-Defendants' baseless lawsuit against Barbaz is clearly one of Carney's "plots" and one "way to get revenge," as evidenced by the fact that not one of the eleven (11) causes of action asserted by Plaintiffs/Counter-Defendants against Barbaz in their initial complaint ("Complaint"), First Amended Complaint ("FAC"), or motion for emergency relief are supported by an *iota of credible, probative, or substantive evidence.*

C.   Plaintiffs/Counter-Defendants' Baseless, Defamatory, and Outlandish Lawsuit Against Barbaz

14.     On July 16, 2024, following the couple's breakup, Plaintiffs/Counter-Defendants filed their initial Complaint against Barbaz, which asserted no less than eleven (11) causes of action against Barbaz, each more fantastic, baseless, frivolous, and more outrageous and unbelievable than the previous.

15.     On August 27, 2024, Plaintiffs/Counter-Defendants amended their Complaint and filed their FAC, which further muddied and clouded the numerous baseless, outlandish, and unsupported accusations levied against Barbaz.

16.     On August 29, 2024, more than (a) *one month after* filing their Complaint and (b) and *more than six months* after initially contacting Barbaz's employer, Point72, repeating the same outlandish accusations and defaming Barbaz,  Plaintiffs/Counter-Defendants maliciously elected to escalate their baseless and retaliatory campaign against Barbaz by seeking – *in bad faith and on Labor Day Weekend* – a motion for a temporary restraining order and an order to show cause for a preliminary injunction against Barbaz (the "OTSC"), falsely asserting irreparable harm after more than seven months of delay by Plaintiffs/Counter-Defendants.

17.     The Court properly denied Plaintiffs/Counter-Defendants' motion for a temporary restraining order and addressed the remainder of the motion on September 18, 2024 by, in part, denying their demand that Barbaz submit his devices and mobile phone for forensic analysis.

18.     Plaintiffs/Counter-Defendants' FAC and OTSC were meritless, devoid of factual support or legal basis, and were clearly meant to harass Barbaz, who is innocent of each outlandish assertion and accusation levied against him.

19.     Specifically, Plaintiffs/Counter-Defendants allege that Barbaz, an internal audit manager at Point72, devised, developed, and purportedly used an imaginary "Illegal Duplicate Device" ("IDD") to – among other things – cause risk of grave injury and/or death to Carney by, for example, altering her insulin delivery. *See* FAC, at ¶ 4.

20.     Plaintiffs/Counter-Defendants' recitation of a laundry-list of *outlandish and baseless accusations* resembles a poorly concocted science fiction film offering action-packed accusations of Barbaz's purported takeover of automobiles, hijacking of insulin-delivery applications, circumvention of the world's most advanced security protocols belonging to the world's foremost technology companies, the blocking of Carney's "suitors" on Carney's dating application, mobile phone clones, and more. Plaintiffs/Counter-Defendants allege, for example, that Barbaz devised, developed, and purportedly used the imaginary IDD to – among other things – cause risk of grave injury and/or death to Carney by altering her insulin delivery. *See* FAC, at ¶ 4.

21.     Plaintiffs/Counter-Defendants' accusations are not only outlandish, but they are contradicted by the evidence.

22.     For example, one of numerous examples of the malicious, defamatory, and factually inaccurate misrepresentations appearing in Plaintiffs/Counter-Defendants' pleadings is Carney's

blatantly false assertion on page five of Plaintiffs/Counter-Defendants' OTSC, wherein Carney states that she "has changed her passwords" on her accounts "hundreds of times since January [of 2024]." Carney's assertions, however, are patently contradicted by documentation provided by Verizon in response to Plaintiffs/Counter-Defendants' subpoena, which establishes that Carney had changed the password or login to her "MyVerizon" account only once from January 2024 to the present. Plaintiffs/Counter-Defendants' malicious and baseless accusations have no bounds.

D. Plaintiffs/Counter-Defendants' Complaint, FAC, and OTSC Utterly Fail to Present A Scintilla of Evidence Supporting The Outlandish Accusations

23. One of the many problematic aspects of Plaintiffs/Counter-Defendants' Complaint, FAC, and OTSC is that, while they assert eleven (11) causes of action, Plaintiffs/Counter-Defendants provides zero evidentiary or other credible support for any of the fantastic assertions contained in Plaintiffs/Counter-Defendants' Complaint, FAC or OTSC.

24. Plaintiffs/Counter-Defendants' FAC and OTSC continuously references an imaginary IDD, which allegedly enabled Barbaz to, among other things, (1) fraudulently impersonate Carney, (2) access Carney's online accounts, (3) access CrewBloom's Google Drive and Workspace, (4) access Carney's Apple and iCloud accounts "in any manner," (5) access Carney's NYU Langone MyChart application containing Carney's medical information, (6) access Carney's Medtronic CareLink insulin-delivery application purportedly placing Carney at risk of "grave physical injury," (7) access Carney's Tesla automobile complete with video recording and trunk-opening capabilities, (8) create "fake accounts," (9) access Carney's social media and other accounts, (10) intercept Carney's phone calls, and (11) "block" all potential "suitors" from Carney's online dating applications. The FAC also alleges Barbaz illegally accessed and exported "thousands of files of protected trade secret information" belonging to Plaintiff/Counter-Defendant CrewBloom. *See* FAC at ¶¶ 4, 5, and 77.

25.     A review of Plaintiffs/Counter-Defendants' accusations against Barbaz evidences the extent of Carney's paranoia and misplaced and unsupported contention that Barbaz is, apparently, controlling <u>every</u> <u>aspect</u> of Carney's life, including the dispensing of Carney's diabetes medication and placing her life at risk. Carney's accusations are not only patently absurd, but utterly devoid of any evidentiary support.

26.     Importantly, one of the numerous issues with Plaintiffs/Counter-Defendants' fantastic tales is that none of the purported "evidence" submitted by Plaintiffs/Counter-Defendants' supports their contention that an IDD either exists or that Barbaz – an internal auditor with a rudimentary understanding of computers and coding – concocted and developed such a device or a clone of Carney's mobile device.

27.     Indeed, Carney and her business partner's declarations submitted as exhibits to Plaintiffs/Counter-Defendants' OTSC contain nothing more than *self-serving and conclusory assertions* that mirror the identical false and unsupported accusations levied against Barbaz in Plaintiffs/Counter-Defendants' Complaint, FAC, and OTSC.   Plaintiffs/Counter-Defendants' exhibits are *shamefully devoid of any probative or evidentiary value* and certainly do not support, in any manner, the numerous, baseless, and retaliatory assertions against Barbaz.

E.   <u>Plaintiffs/Counter-Defendants' Exhibits Submitted with Their OTSC Fail to Support Any of Plaintiffs/Counter-Defendants' Accusations Against Barbaz</u>

28.     As noted, Plaintiffs/Counter-Defendants' numerous exhibits submitted in purported support of their OTSC utterly fail to support their outlandish accusations against Barbaz and render Plaintiffs/Counter-Defendants' accusations baseless, frivolous, defamatory, and sanctionable.

29.     Indeed, an examination of the numerous exhibits submitted by Plaintiffs/Counter-Defendants' clearly establishes the frivolous, baseless, and improper nature of the lawsuit against Barbaz.

30.     For example, Exhibit B to Carney's Declaration is an eight-row printout of a chart with headings that include, among others, columns titled "Description," "Actor," and "Takeout Initiator," without any explanation of what the chart purports to establish or prove and, moreover, Barbaz's name does not appear in the exhibit.  Declaration of Brianna Carney ("Carney Decl." or "Carney's Declaration"), dated August 29. 2024, at Ex. B (Dkt. # 14-2).  Yet, unbelievably, Plaintiffs/Counter-Defendants falsely claim that the exhibit allegedly shows Barbaz's "illegal export," an accusation that is patently false and unsupported by Plaintiffs/Counter-Defendants' exhibit.  Clearly, Exhibit B utterly fails to establish the existence of the imaginary IDD or support any of Plaintiffs/Counter-Defendants' *outlandish, harassing, and untrue accusations* against Barbaz.

31.     Next, Exhibit C to Carney's Declaration is an embarrassingly illegible printout of two rows of numbers and letters reading, for example, "Prior visibility: Unknown" and "Visibility: Private" without any explanation of what the chart purports to establish or prove and, moreover, Barbaz's name does not appear in the exhibit.  Carney Decl., at Ex. C (Dkt. # 14-3).  Clearly, Exhibit C fails to establish the existence of the imaginary IDD and fails to support any of Plaintiffs/Counter-Defendants' *outlandish, harassing, and untrue accusations* against Barbaz.

32.     Importantly, Plaintiffs/Counter-Defendants' assign a tremendous amount of probative "weight" to Exhibit C to their FAC, which is a purported screenshot of Carney's mobile phone, which Carney asserts evidences a supposed "login" into Carney's undisclosed "authenticator application" allegedly from the location of Barbaz's employer, Point72.   FAC at Ex. C.

33.     Again, Carney disingenuously misrepresents what Exhibit C purports to establish, since the exhibit can be easily replicated by anyone, including Carney, by simply visiting Point72's

login portal on any mobile device. Yet Carney alleges, wrongly, that the exhibit is conclusive that Barbaz is using the IDD to log into his own employer's portal (i.e., a nonsensical assertion). Finally, Barbaz will establish, via discovery and subpoenas in the matter, that Carney was the likely source of Exhibit C and the purported login.

34.    Indeed, nothing in Exhibit C either proves or suggests that Barbaz logged into Carney's mobile device and it is more plausible that Carney herself may have been attempting to sign into Point72's systems, particularly in light of her admittedly vengeful mindset and the utter lack of any subsequent Point72 "logins" since November 2023.  Clearly, Exhibit C fails to establish the existence of the imaginary IDD and fails to support any of Plaintiffs/Counter-Defendants' *outlandish, harassing, and untrue accusations* against Barbaz.

35.    Next, Plaintiffs/Counter-Defendants allege that they commissioned or ordered "investigations" into Barbaz's countless bad acts and, according to Carney's co-founder, Kate Ringcodan, CrewBloom had "spent close to $350,000" in alleged "attempts to remedy the ongoing hacking by Defendant." *See* Declaration of Kate Ringcodan ("Ringcodan Decl." or Ringcodan's Declaration) (Dkt. # 13), dated August 28, 2024, at ¶ 36. Nonetheless, Plaintiffs/Counter-Defendants *utterly fail to provide or present a single report, analysis, investigation file, or conclusion* reached by any expert, vendor, contractor, or any other internal or third party evidencing the supposed "hacking" by Barbaz.

36.    Next, Plaintiffs/Counter-Defendants also allege that their investigations into Barbaz's bad acts eventually involved "law enforcement agencies" (*See* OTSC, at pg. 5), yet Plaintiffs/Counter-Defendants, again, *fail to provide or present a single report, analysis, investigation file, or conclusion* reached by any law enforcement agency evidencing the supposed "hacking" by Barbaz.

37.    Plaintiffs/Counter-Defendants' FAC and OTSC continues to force upon this Court a baseless and sanctionable tale with nothing more than self-serving assertions, which Plaintiffs/Counter-Defendants improperly present as support for and proof of Barbaz's numerous alleged bad acts.

38.    Although Plaintiffs/Counter-Defendants have utterly failed to offer any evidence in support of the defamatory and harassing accusations, Plaintiffs/Counter-Defendants continue to improperly assert patently false accusations against Barbaz. For example, Plaintiffs/Counter-Defendants assert, in conclusory fashion, that Barbaz "routinely deletes the evidence of his unlawful conduct," yet again *fail to offer an iota of evidence* supporting their baseless accusation. *See* OTSC, at pg. 5.  Unless Carney is a clairvoyant with extraordinary abilities, there is simply no support for Carney's claim that Barbaz is deleting purported evidence or conducting himself improperly.

F.    Plaintiffs/Counter-Defendants Provides Absolutely No Evidence That Barbaz "Interfered with CrewBloom's Trade Secrets"

39.    Plaintiffs/Counter-Defendants assert, again in conclusory fashion, that Plaintiff/Counter-Defendant CrewBloom's "team" purportedly conducted an internal analysis and noticed "unknown Windows devices" synched to Carney's "user profile." *See* OTSC, at pg. 4. Plaintiffs/Counter-Defendants then claim that they allegedly engaged "outside data consultants" to investigate the alleged data breach. *Id*.

40.    Without identifying the outside consultant or providing any evidence of a report, analysis, or other documentation substantiating Plaintiffs/Counter-Defendants' claims, Plaintiffs/Counter-Defendants assert – in self-serving and conclusory fashion – that the unidentified team had "discovered hundreds of CrewBloom's Trade Secrets" and "confidential CrewBloom files" among other things, "had been exported to unknown devices." *Id*.

41.     Plaintiffs/Counter-Defendants also fail to identify a single item or piece of purportedly confidential information that was leaked, stolen, or otherwise misappropriated and, unsurprisingly, their exhibits, again, utterly fail to establish any past, or present, interference by Barbaz with any of Crewbloom's supposed trade secrets.

42.     Plaintiffs/Counter-Defendants conveniently cite to Carney's and co-founder Ringcodan's own conclusory declarations as purported proof of Barbaz's supposedly misappropriation of CrewBloom's trade secrets. For example, Carney states, in conclusory fashion, that "[Barbaz] deletes client emails from Ms. Carney's CrewBloom email on a regular basis," yet provides no evidence supporting their false accusations against Barbaz. *See* OTSC, at pg. 6.

43.     Plaintiffs/Counter-Defendants' also make the baseless accusation that Barbaz "deletes files and Trade Secrets" without any evidentiary support. *See* OTSC, at pg. 6. Although Plaintiffs/Counter-Defendants allegedly spent more than $350,000 in investigations (*see* Reingcodan Decl., at ¶ 36), Plaintiffs/Counter-Defendants *fail to provide any report or investigation* from any third-party vendor or consultant evidencing or otherwise supporting the baseless claims that Barbaz has – or is – deleting any such emails. Indeed, Plaintiffs/Counter-Defendants claim that "CrewBloom is no closer to ending [Barbaz's] unauthorized access or understanding the extent of the harm he has caused" because the bad acts Barbaz purportedly engaged in *simply did not occur*.

44.     Plaintiffs/Counter-Defendants have disingenuously submitted and relied upon irrelevant exhibits which fail to offer an iota of evidentiary support for their claims, which are nothing more than a defamatory assault upon Barbaz's reputation among his peers, employers, and community in general.

G.  <u>Plaintiffs/Counter-Defendants' Provides Absolutely No Evidence That Barbaz "Interfered with Carney's iPhone and Personal Electronic Information</u>

i. <u>Plaintiffs/Counter-Defendants' Provide No Evidence that Barbaz Interfered with Plaintiff Carney's Insulin Delivery</u>

45.     Plaintiffs/Counter-Defendants continue their baseless and categorically untrue assault against Barbaz by accusing him, again in conclusory fashion with no evidence, of having purported "unfettered access" to Carney's Medtronic CareLink application, which "delivers insulin to Ms. Carney's body." *See* OTSC, at pg. 7. Plaintiffs/Counter-Defendants' sanctionable and retaliatory conduct now includes the outrageous accusation that Barbaz– in addition to the myriad of fantastic accusations already discussed herein – also intends to "cause [Carney] serious medical complications by interfering with [her] insulin intake." *See* Carney Decl., at ¶ 57.

46.     Importantly, not only would Barbaz's conduct be criminal, but one would assume that Carney would have reported such dangerous conduct to the authorities, contacted NYU Langone, or taken a myriad of serious and swift actions to protect herself and the general public from the life-threatening flaws and supposed loopholes in the medical devises' security protocols. Carney again, *fails to provide an iota of credible evidence supporting her baseless and defamatory accusations* against Barbaz, who is innocent of Carney's baseless assertions.

47.     Exhibit U and Exhibit V to Carney's Declaration, for example, utterly fail to support any of Plaintiffs/Counter-Defendants' accusations against Defendant/Counter-Claimant. Carney Decl., at Ex. U is a purported printout of an unnamed chart from an unnamed source listing and highlighting certain dates, IP addresses, ISP providers, and locations. However, nothing contained therein establishes, supports, or suggests that Barbaz has, or is, engaging in the bad acts Carney has accused Barbaz of.

48.     Exhibit V is a purported mobile phone bill from Verizon dated January 8 through February 7, 2024. Again, while the exhibit simply lists phone calls allegedly placed from Carney's

mobile phone, Carney then makes the fantastic leap, without evidence, that the exhibit somehow evidences "the calls [Barbaz] intercepted in New York." *See* OTSC, at pg. 7. Again, Plaintiffs/Counter-Defendants' evidence fails to support any of the *outlandish, harassing, and untrue accusations* against Barbaz, since a entry on the Verizon phone bill stating, for example, "Jan 8, 11:04 AM, [a phone number], Staten Isl. NY, Incoming CL" simply shows that a telephone call *originated* in Staten Island, New York, but in no way establishes or otherwise suggests that Barbaz "intercepted" any of the incoming calls or that Barbaz interfered with any of the incoming calls in any manner. It is <u>nonsensical</u> and <u>outrageous</u> to suggest that Barbaz would intercept a call intended for Carney and then proceed to have a seventeen (17) minute conversation with a stranger. The assertion is frivolous and nonsensical.

ii. <u>Plaintiffs/Counter-Defendants Provide No Evidence that Barbaz Interfered with Carney's Hinge Dating Application or Carney's Tesla Automobile</u>

49.    Plaintiffs/Counter-Defendants continues the litany of fantastic and unsupported accusations against Barbaz by accusing him of interfering with her numerous "suitors" on Carney's dating profile on the Hinge dating application.

50.    Specifically, Carney accuses Barbaz of "read[ing] and dele[ting] her messages, and [blocking] suitors from Ms. Carney's profile." *See* OTSC, at pg. 7. Again, neither Exhibit W nor Exhibit X to Carney's Declaration evidence or establish, *in any manner or stretch of the imagination*, that Barbaz was (a) active on Carney's Hinge account or (b) that Barbaz logged into Carney's Hinge account. Exhibit W is nothing more than a few lines of apparent code (e.g., reading "block_type": "remove" with a timestamp) submitted without any explanation of what the code purportedly evidences or that Barbaz, in any manner, logged into Carney's account. It is far more plausible that suitors removed themselves from Carney's list of suitors voluntarily after viewing Carney's profile.

51.     Defendant/Counter-Claimant will be subpoenaing Hinge for additional documentation and reports regarding each of these alleged suitors and the suitors' interaction with Carney's Hinge account.

52.     Exhibit X suffers the same malady and consists solely of a chart listing IP addresses, provider, city/area, and zip code, but which do not, in any manner prove or so much as suggest that Barbaz logged into Carney's Hinge account.  Notably, Carney fails to provide a letter, explanation, or investigative report from Hinge regarding this issue and the defamatory accusations against Barbaz.

53.     Plaintiffs/Counter-Defendants then accuses Barbaz of the unbelievable and outlandish claim that Barbaz has, and continues to, use the imaginary IDD to "interefer[e] with Ms. Carney's Tesla regularly." *See* OTSC, at pg. 8.  Plaintiffs/Counter-Defendants, in conclusory fashion, accuses Barbaz of "controlling" Carney's Tesla automobile, but offers nothing more than Carney's few communications with Tesla.

54.     Exhibits H, J, L, and N (*see* Carney Decl., at Exs. H, J, L, N) simply evidence that Carney changed her Tesla password on January 31, 2024, February 17, 2024, March 1, 2024, and March 29, 2024, but *fail to implicate or support Plaintiffs/Counter-Defendants' assertion* that Barbaz either logged into Carney's account, which he did not, or that Barbaz is controlling Carney's Tesla.

55.     Exhibits I, K, and M (*see* Carney Decl., at Exs. I, K, M) are nothing more than Carney's follow-up emails with Tesla, which simply evidence that Carney contacted Tesla Customer Support on February 2, 2024, February 21, 2024, and March 4, 2024 (i.e., not one of the exhibits references the subject matter, conclusion of Tesla customer support, or the substance of

any communications between Carney and Tesla regarding Carney's baseless accusations against Barbaz).

56.     Exhibits O and Q (*see* Carney Decl., at Exs. O, Q) purportedly show Barbaz "disabled [the] multi-factor authentication" and that Carney reinstated multi-factor authentication. However, none of Carney's exhibits evidence, suggest, or establish, in any manner, that Barbaz disabled the authentication.  Carney's exhibits suffer from the same malady in that the exhibits fail to constitute proof or evidence that Barbaz was, or is, guilty of any of the countless bad acts he is accused of.  Barbaz is innocent of Plaintiffs/Counter-Defendants' bogus accusations.  Notably, the lack of any response by Tesla appears to validate the baseless nature of Carney's complaints to the automaker.

57.     Plaintiffs/Counter-Defendants' additional baseless and unsupported contentions that Barbaz was, and is, using the imaginary IDD (which does not exist) to open the Tesla's trunk "at all hours of the night, record the interior of the car, and cause the battery to run" (*see* OTSC, pgs. 8-9) are similarly baseless, unsupported, and outlandish.

H.  The Damaging Effects of Plaintiffs/Counter-Defendants' Baseless, Defamatory, and Retaliatory Lawsuit

58.     The damaging and defamatory effects of Plaintiffs/Counter-Defendants' smear campaign continues to reverberate today, and Barbaz continues to suffer significant personal and professional damage as a result of Plaintiffs/Counter-Defendants' outlandish and defamatory accusations against him.

59.     Plaintiffs/Counter-Defendants' false and baseless claims are unsupported by evidentiary support and run afoul of Federal Rule of Civil Procedure 11 which, among other things, prohibits baseless lawsuits premised upon falsehoods and misrepresentations.

60.     Rule 11 prohibits litigants from filing lawsuits for any improper purpose, as in this case, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. *See* R. Civ. Pro. 11(b)(1) and (2). Barbaz will prove, without a doubt, that Plaintiffs/Counter-Defendants' allegations are untrue and they will be liable for their improper conduct and lack of honesty, transparency, and candor with the Court.

61.     Plaintiffs/Counter-Defendants' baseless accusations have forced Barbaz to expend time and money to move for a protective order against Carney in New York Kings County Family Court for, among other things, an assault emanating from Carney's spitting on Barbaz simply because Barbaz had failed to place food leftovers in the refrigerator, as well as Carney's refusal to allow Barbaz access to his apartment, which he rented but which the two were sharing at the time, to retrieve his belongings following the breakup. Carney then escalated an already-tense situation by moving for her own protective order.

62.     Today, true to her admonitions and threats, Carney has set into motion an "all-out" retaliatory, vengeful, and defamatory assault against Barbaz with the filing of this frivolous and harassing lawsuit against him, alleging eleven (11) causes of action comprised of nothing more than Plaintiffs/Counter-Defendants' conclusory and baseless assertions *without an iota of legal or evidentiary support*.

63.     Jurisprudence and the legal process demands cognizable assertions and truthful representations of facts and circumstances that support alleged causes of action and claims against a counterparty.

64.      In this case, however, Plaintiffs/Counter-Defendants' lawsuit is nothing more than a damaging and disingenuous effort by Plaintiffs/Counter-Defendants (a) to retaliate against, smear, and attack Barbaz's reputation, (b) to interfere and disrupt Barbaz's personal and

professional life, and (c) to continue to inflict serious, unwarranted, and undeserved emotional distress by asserting *baseless retaliatory claims* that needlessly and improperly consume precious judicial resources.

65.    The entirety of Plaintiffs/Counter-Defendants' allegations are untrue, as will be revealed during both fact and expert discovery.

66.    Plaintiffs/Counter-Defendants' retaliatory conduct and accusations have defamed Barbaz and caused irreparable reputational damage with his contacts, colleagues, co-workers, and his employer Point72.

67.    In addition to the irreversible reputational damage Plaintiffs/Counter-Defendants' baseless accusations have caused, Plaintiffs/Counter-Defendants have also interfered with Barbaz's future economic prospects and opportunities and Plaintiffs/Counter-Defendants will be held accountable and liable for the revenge-driven and false allegations against Barbaz, as well as for Plaintiffs/Counter-Defendants' waste of judicial resource and lack of candor with the Court.

68.    Plaintiffs/Counter-Defendants' baseless lawsuit and assertions have also caused Barbaz an increased need for therapy and significant emotional distress including, among other things, depression, anxiety, restlessness, difficulty sleeping, worry, and other symptoms directly related to both the false allegations and accusations contained in Plaintiffs/Counter-Defendants' Complaint, FAC, and OTSC, as well as Carney's threats and incessant bullying of Barbaz. Indeed, Barbaz has experienced sleeplessness and continuous worry and stress since the filing of Plaintiffs/Counter-Defendants' lawsuit.

## FIRST CAUSE OF ACTION
### Defamation

69.    Defendant/Counter-Claimant repeats and realleges each and every allegation set forth above as if fully set forth herein.

34

70.     On January 30, 2024, Plaintiffs/Counter-Defendants disseminated, published, and circulated to Barbaz's employer, Point72, a letter (the "January 30 Letter") accusing Barbaz of seeking to obtain unauthorized access to CrewBloom's proprietary and confidential information, although Plaintiffs/Counter-Defendants have failed to offer any evidence or proof of such access.

71.     The January 30 Letter also asserted the false claim that Barbaz had violated an order of protection filed against him.

72.     On June 24, 2024, Plaintiffs/Counter-Defendants disseminated, published, and circulated a second defamatory letter to both Barbaz and to his employer, Point72, a "Cease & Desist Demand Letter regarding [Barbaz's] illegal conduct and harassment of Brianna Carney." (the "June 24 Letter").

73.     The June 24 Letter contained false accusations against Barbaz that, were not only untrue, but which damaged his reputation among his peers and with his employer, Point72.

74.     The June 24 Letter and email communications to Point72 and others falsely accused Barbaz of devising and possessing an imaginary IDD, which allegedly enabled him to, among other things, (1) fraudulently impersonate Carney, (2) access Carney's online accounts, (3) access CrewBloom's Google Drive and Workspace, (4) access Carney's Apple and iCloud accounts "in any manner," (5) access Carney's NYU Langone MyChart application containing Carney's medical information, (6) access Carney's Medtronic CareLink insulin-delivery application purportedly placing Carney at risk of "grave physical injury," (7) access Carney's Tesla automobile complete with video recording and trunk-opening capabilities, (8) create "fake accounts," (9) access Carney's social media and other accounts, (10) intercept Carney's phone calls, and (11) "block" all potential "suitors" from Carney's online dating applications.  The FAC also alleges that

Barbaz illegally accessed and exported "thousands of files of protected trade secret information" belonging to Plaintiff/Counter-Defendant CrewBloom.

75.    In January of 2024, Point72's department of human resources also notified Barbaz that Plaintiff/Counter-Defendant Carney had written and circulated an email to several Point72 "HR Business Partners" falsely and maliciously accusing Barbaz of engaging in an inappropriate relationship with a female coworker (the "Carney Email").  Carney's email was false, defamatory, and caused serious and irreparable injury to Barbaz. In fact, Point72 investigated Carney's salacious and false accusation and informed Barbaz that Point72 had determined that no improper relationship existed between Barbaz and his coworker and that the relationship was plutonic.

76.    Plaintiffs/Counter-Defendants willfully, intentionally, and maliciously circulated and disseminated the false and defamatory statements in the January 30 Letter, the June 24 Letter, and the Carney Email for the express purpose of injuring Barbaz and irreversibly damaging his professional and personal reputation in retaliation for his refusal to reconcile, or otherwise "make up" with Carney.

77.    On information and belief, Plaintiffs/Counter-Defendants may have also maliciously disseminated the same false and harassing claims to additional third parties, facts which will surface during the discovery process in this lawsuit.

78.    Plaintiffs/Counter-Defendants' January 30 Letter, June 24 Letter, and Carney Email were circulated in bad faith, were completely devoid of any evidentiary support from circulation of the letters to the present, were circulated with malice, knowledge of their falsity, or reckless disregard for the truth.

79.    In response to Plaintiffs/Counter-Defendants' malicious and untrue accusations and statements, Barbaz (a) has been placed on indefinite administrative leave by his employer, Point72,

since July of 2024, (b) has lost any and all prospects for career and professional advancement or promotion at Point72, (c) has suffered irreversible injury to his personal and professional reputation among his peers, employer, and the community at large, and (d) has had to incur significant time and expense responding to, and defending himself, against Plaintiffs/Counter-Defendants' false, malicious, and sanctionable accusations against him.

80.    Plaintiffs/Counter-Defendants' false statements and accusations have exposed Barbaz to public contempt, ridicule, and has irreparably tarnished his reputation and standing in the community.

81.    Plaintiffs/Counter-Defendants' false statements have caused Barbaz special and pecuniary harm, including, among other things, damage to his business and professional opportunities and earning potential.

82.    As a direct and proximate cause of Plaintiffs/Counter-Defendants' intentional and malicious publication and circulation of false and defamatory accusations, Barbaz has suffered, and continues to suffer, substantial damages and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial, but no less than $550,000.

## SECOND CAUSE OF ACTION
### Defamation *Per Se*

83.    Defendant/Counter-Claimant repeats and realleges each and every allegation set forth above as if fully set forth herein.

84.    On January 30, 2024, Plaintiffs/Counter-Defendants disseminated, published, and circulated to Barbaz's employer, Point72, a letter (the "January 30 Letter") accusing Barbaz of seeking to obtain unauthorized access to CrewBloom's proprietary and confidential information, although Plaintiffs/Counter-Defendants have failed to offer any evidence or proof of such access.

85. The January 30 Letter also asserted the false claim that Barbaz had violated an order of protection filed against him.

86. On June 24, 2024, Plaintiffs/Counter-Defendants Carney and CrewBloom disseminated, published, and circulated to Barbaz and to his employer, Point72, a letter "regarding [Barbaz's] illegal conduct and harassment of Brianna Carney." (the "June 24 Letter").

87. The June 24 Letter contained false accusations against Barbaz, were not only untrue, but which damaged his reputation in his trade, business, and profession.

88. The June 24 Letter and email communications to Point72 and others falsely accused Barbaz of devising and possessing an imaginary IDD, which allegedly enabled him to, among other things, (1) fraudulently impersonate Carney, (2) access Carney's online accounts, (3) access CrewBloom's Google Drive and Workspace, (4) access Carney's Apple and iCloud accounts "in any manner," (5) access Carney's NYU Langone MyChart application containing Carney's medical information, (6) access Carney's Medtronic CareLink insulin-delivery application purportedly placing Carney at risk of "grave physical injury," (7) access Carney's Tesla automobile complete with video recording and trunk-opening capabilities, (8) create "fake accounts," (9) access Carney's social media and other accounts, (10) intercept Carney's phone calls, and (11) "block" all potential "suitors" from Carney's online dating applications. The FAC also alleges that Defendant/Counter-Claimant illegally accessed and exported "thousands of files of protected trade secret information" belonging to Plaintiff/Counter-Defendant CrewBloom.

89. In January of 2024, Point72's department of human resources also notified Barbaz that Plaintiff/Counter-Defendant Carney had written and circulated the Carney Email to several Point72 "HR Business Partners" falsely and maliciously accusing Barbaz of engaging in an inappropriate relationship with a female coworker. The Carney Email was false, defamatory, and

caused serious and irreparable injury to Barbaz. In fact, Point72 investigated Carney's salacious and false accusation and informed Barbaz that Point72 had determined that no improper relationship existed between Barbaz and his coworker and that the relationship was plutonic.

90.    Plaintiffs/Counter-Defendants willfully, intentionally, and maliciously circulated and disseminated the false and defamatory statements in the January 30 Letter, the June 24 Letter, and the Carney Email for the express purpose of injuring Barbaz and irreversibly damaging his professional and personal reputation in retaliation for his refusal to reconcile, or otherwise "make up" with Carney.

91.    The January 30 Letter, the June 24 Letter, and Carney Email repeated the same false, untrue, and unsubstantiated assertions and accusations levied by Plaintiffs/Counter-Defendants against Barbaz.

92.    Plaintiffs/Counter-Defendants' January 30 Letter, June 24 Letter, and Carney Email were circulated in bad faith, were completely devoid of any evidentiary support from circulation of the letters to the present, were circulated with malice, knowledge of their falsity, or reckless disregard for the truth.

93.    Plaintiffs/Counter-Defendants willfully, intentionally, and maliciously circulated and disseminated the false and defamatory statements for the explicit purpose of injuring Barbaz and irreversibly damaging his professional and person reputation in retaliation for his refusal to reconcile, or otherwise "make up" with Carney.

94.    On information and belief, Plaintiffs/Counter-Defendants may have also maliciously disseminated the same false and harassing claims to additional third parties, facts which will surface during the discovery process in this lawsuit.

95.    In response to Plaintiffs/Counter-Defendants' malicious and untrue accusations and

statements, Barbaz (a) has been placed on indefinite administrative leave by his employer, Point72, since July of 2024, (b) has lost any and all prospects for career and professional advancement or promotion at Point72, (c) has suffered irreversible injury to his personal and professional reputation among his peers, employer, and the community at large, and (d) has had to incur significant time and expense responding to, and defending himself, against Plaintiffs/Counter-Defendants' false, malicious, and sanctionable accusations against him.

96.    The defamatory statements constitute defamation *per se* because the false statements have injured Barbaz in his office, profession or occupation by accusing Barbaz of, and ascribing to him, certain conduct, characteristics or conditions that would adversely affect his fitness for the proper conduct of his profession. Accordingly, damages are presumed.

97.    As a direct and proximate cause of Plaintiffs/Counter-Defendants' intentional and malicious publication and circulation of false and defamatory accusations, Barbaz has suffered, and continue to suffer, substantial damages and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial.

## THIRD CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

98.    Defendant/Counter-Claimant repeats and realleges each and every allegation set forth above as if fully set forth herein.

99.    Plaintiffs/Counter-Defendants' outrageous accusations and systemic harassing of Barbaz is a deliberate and malicious campaign of harassment and intimidation with the intent to cause, or the knowledge that it would cause him severe mental distress.

100.    Plaintiffs/Counter-Defendants' malicious campaign of harassment has caused Barbaz an increased need for therapy and significant emotional harm including, among other things, depression, anxiety, restlessness, difficulty sleeping, and other symptoms directly related to both

the false allegations contained in Plaintiffs/Counter-Defendants' Complaint, FAC, and OTSC, in addition to Carney's threats and incessant bullying of Barbaz.

101.    As noted, Plaintiffs/Counter-Defendants will be held accountable for thier misconduct and improper harassing of Barbaz.

102.    As a direct and proximate cause of Plaintiffs/Counter-Defendants' false, hateful, and vengeful conduct, Barbaz has suffered, and continue to suffer, substantial emotional harm and injury and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial.

### FOURTH CAUSE OF ACTION
### Tortious Interference with Economic Relations

103.    Defendant/Counter-Claimant repeats and realleges each and every allegation set forth above as if fully set forth herein.

104.    As noted, Plaintiffs/Counter-Defendants were aware that Barbaz had a business relationship with Point72, that he was an employee of Point72, and that he relied on his employment contract with Point72 as his sole means of a salary and financial independence.

105.    On January 30, 2024, Plaintiffs/Counter-Defendants disseminated, published, and circulated to Barbaz's employer, Point72, the January 30 Letter accusing Barbaz of seeking to obtain unauthorized access to CrewBloom's proprietary and confidential information, although Plaintiffs/Counter-Defendants have failed to offer any evidence or proof of such access.

106.    The January 30 Letter also asserted the false claim that Barbaz had violated an order of protection filed against him.

107.    The June 24 Letter and email communications to Point72 and others falsely accused Defendant/Counter-Claimant of devising and possessing an imaginary IDD, which allegedly enabled him to, among other things, (1) fraudulently impersonate Carney, (2) access Carney's

online accounts, (3) access CrewBloom's Google Drive and Workspace, (4) access Carney's Apple and iCloud accounts "in any manner," (5) access Carney's NYU Langone MyChart application containing Carney's medical information, (6) access Carney's Medtronic CareLink insulin-delivery application purportedly placing Carney at risk of "grave physical injury," (7) access Carney's Tesla automobile complete with video recording and trunk-opening capabilities, (8) create "fake accounts," (9) access Carney's social media and other accounts, (10) intercept Carney's phone calls, and (11) "block" all potential "suitors" from Carney's online dating applications. The FAC also alleges that Defendant/Counter-Claimant illegally accessed and exported "thousands of files of protected trade secret information" belonging to Plaintiff/Counter-Defendant CrewBloom.

108.    In January of 2024, Point72's department of human resources also notified Barbaz that Plaintiff/Counter-Defendant Carney had written and circulated the Carney Email to several Point72 "HR Business Partners" falsely and maliciously accusing Barbaz of engaging in an inappropriate relationship with a female coworker. The Carney Email was false, defamatory, and caused serious and irreparable injury to Barbaz. In fact, Point72 investigated Carney's salacious and false accusation and informed Barbaz that Point72 had determined that no improper relationship existed between Barbaz and his coworker and that the relationship was plutonic.

109.    Plaintiffs/Counter-Defendants willfully, intentionally, and maliciously circulated and disseminated the false and defamatory statements in the January 30 Letter, the June 24 Letter, and the Carney Email for the express purpose of injuring Barbaz and irreversibly damaging his professional and personal reputation in retaliation for his refusal to reconcile, or otherwise "make up" with Carney.

110.    The January 30 Letter, the June 24 Letter, and Carney Email repeated the same false, untrue, and unsubstantiated assertions and accusations levied by Plaintiffs/Counter-

Defendants against Barbaz.

111.    The January 30 Letter falsely and maliciously accuses Defendant/Counter-Claimant of using Point72's systems and devices for the allegedly illegal purpose of accessing Plaintiff/Counter-Defendant Carney's work accounts, a false assertion unsupported by any credible or cognizable evidence or support.

112.    Plaintiffs/Counter-Defendants' January 30 Letter, June 24 Letter, and Carney Email were circulated in bad faith, were completely devoid of any evidentiary support from circulation of the letters to the present, were circulated with malice, knowledge of their falsity, or reckless disregard for the truth.

113.    Plaintiffs/Counter-Defendants intentionally sought to interfere with Barbaz's contractual relationship with Point72, his employer, by submitting the January 30 Letter, the June 24 Letter, and the Carney Email to Point72, all of which falsely accused Barbaz of outrageous and unsupported bad acts and misconduct.

114.    On information and belief, Plaintiffs/Counter-Defendants also disseminated additional communications accusing Barbaz of an illicit and improper relationship with a Point72 co-worker, another patently false assertion unsupported by any credible or cognizable evidence or support.

115.    The January 30 Letter also makes repeated references to an "Illegal Duplicative Device," which is a figment of Plaintiffs/Counter-Defendants' imagination and simply does not exist.

116.    Barbaz has neither created nor concocted any duplicative device, yet Plaintiffs/Counter-Defendants included the baseless assertion and accusation in the January 30 Letter in further efforts to interfere with Barbaz's economic prospects and permanently halt any

prospect for upward mobility or continued employment at Point72.

117.    Plaintiffs/Counter-Defendants have acted by wrongful means and with the sole purpose of malice and dishonesty to cause permanent damage and injury to Barbaz and his existing and potential future contractual relationship and employment with Point72, which has been significantly, permanently, and irreversibly damaged due to Plaintiffs/Counter-Defendants' malicious conduct.

118.    Plaintiffs/Counter-Defendants' January 30 Letter and June 24 Letter were circulated in bad faith, were completely devoid of any evidentiary support from circulation of the letters to the present, were circulated with malice, knowledge of their falsity, or reckless disregard for the truth.

119.    As a result of Plaintiffs/Counter-Defendants' malicious and intentional misconduct, Barbaz (a) has been placed on indefinite administrative leave by his employer, Point72, following receipt of the June 24 Letter, the Carney Email, the Complaint, and the FAC, (b) has lost any and all prospects for career and professional advancement or promotion at Point72, (c) has suffered irreversible injury to Barbaz's personal and professional reputation, and (d) has had to incur significant time and expense responding to, and defending himself, against Plaintiffs/Counter-Defendants' false, malicious, and sanctionable accusations against Barbaz.

120.    As a direct and proximate cause of Plaintiffs/Counter-Defendants' false and vengeful conduct and tortious interference with Barbaz's economic relations and economic prospect and opportunity, Barbaz has suffered, and continue to suffer, substantial economic and related harm and injury and is entitled to both compensatory, special, and punitive damages in an amount to be ascertained at trial, but no less than $550,000.

**RELIEF SOUGHT**

WHEREFORE, Defendant/Counter-Claimant prays for:

1.  As to the First Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, attorney's fees, and all other applicable damages as this Court may deem appropriate at an amount to be ascertained at trial, but no less than $550,000.

2.  As to the Second Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, special damages, attorney's fees, and all other applicable damages as this Court may deem appropriate at an amount to be ascertained at trial.

3.  As to the Third Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, attorney's fees, and all other applicable damages as this Court may deem appropriate at an amount to be ascertained at trial.

4.  As to the Fourth Cause of Action, an award of compensatory money damages, punitive damages, exemplary damages, attorney's fees, and all other applicable damages as this Court may deem appropriate at an amount to be ascertained at trial, but no less than $550,000.

5.  As to Plaintiffs/Counter-Defendants' FAC, generally, an award of costs, reasonable attorney's fees, and sanctions pursuant to Fed. R. Civ. Pro. R. 11, as the Court may determine, because Plaintiffs/Counter-Defendants' lawsuit is frivolous and the factual contentions in Plaintiffs/Counter-Defendants' FAC lack any evidentiary support and the assertions therein are completely without merit in law or fact and

filed primarily to harass, cause unnecessary delay, or needlessly increase the cost of litigation to Defendant/Counter-Claimant.

## **JURY DEMAND**

Defendant/Counter-Claimant demands trial by jury of the claims asserted in this action.

DATED: September 26, 2024

SOLER LEGAL LLC

_____

Albert J. Soler (AS1974)
270 W. 39th St., Suite 1304
New York, NY 10018
Tel: (646) 660-1961
Email: asoler@solerlegal.com

**VERIFICATION**

I, ALEC MICHAEL BARBAZ, being duly sworn, deposes and says:

     I am the Defendant in the above-captioned action. I have read the Verified Answer and Counterclaims herein and know the contents thereof. The same are true to my knowledge, except as to any matters contained therein that are alleged on information and belief and as to those matters, I believe them to be true.

                                                Alec Michael Barbaz

Sworn to me this:

_26_ day of _Sept_, 2024

PEDRO FIGUEROA
NOTARY PUBLIC, STATE OF NEW YORK
01FI0003719
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES MARCH 25, 2027

Notary Public